FRANK F. STODDER & others *vs.* ROSEN TALKING MACHINE COMPANY & others.

Suffolk.   October 16, 1923. — November 28, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & JENNEY, JJ.

*Nuisance. Equity Jurisdiction,* To enjoin nuisance. *Equity Pleading and Practice,* Decree, Proceedings for contempt. *Words,* "Appreciably."

A final decree in a suit in equity by owners respectively of stores on School Street in Boston enjoined a corporation, owning and operating a store near those of the plaintiffs for demonstration and sale of machines for the reproduction of sound, and its officers and agents " from playing or permitting to be played either in the doorway or entrance outside of its store premises . . . or inside the store premises near the door or doorway of the said store, any records on a talking machine, victrola, graphophone, phonograph, or grafonola in such a manner as to cause the noise produced from the playing of records on said victrolas, talking machine, graphophone, phonograph, or grafonola to be appreciably audible or heard in any part of the respective places of business occupied by the " plaintiffs. *Held,* that

(1) The decree, which the defendants were required to obey at their peril, did not in terms or by necessary implication provide that only a degree of noise which materially and injuriously affected the business of the plaintiffs was enjoined;

(2) While the decree did not inhibit the use of the machines to the extent that no noise, no sound from the playing of records, would enter the plaintiffs' premises, its provisions did not mean that the right of the defendants to cause the issuance of such noise was to be determined merely from an ascertainment of whether or not they caused substantial harm to the business of the plaintiffs or to their reasonable comfort and enjoyment of life;

(3) By the use of the words, "appreciably audible or heard," the decree pointed out that the defendants should not play the records upon any of the machines in a manner that caused the noise of the records to enter the premises of the plaintiffs in such volume and intensity as to be there recognized by the senses as noises produced by the playing of records on the defendants' premises.

It appeared, upon the hearing of a petition that the defendants be adjudged in contempt for the violation of the decree above described, that, while the noises proceeding from instruments upon the defendants' premises were generally softer than they were before the issuance of the decree, the sound produced could be plainly heard in the plaintiffs' premises although in general such sound " did not amount to such substantial proportions . . . which would interfere with the comfort and enjoyment of life by the plaintiffs." At the hearing of the suit in which the decree was entered, it had been found " that the injury or discomfort caused the petitioners and their employees is out of proportion to the advantage accruing to the respondent [corporation] in the playing of the machine as it is played over what would accrue to it if it were played in such a way that it could not be heard or appreciably heard in the petitioners' place of business " and in such case that " it would not materially affect them or the success of their respective businesses." *Held,* that

(1) The decree entered was not limited to restraining only such noises as materially and injuriously affected the plaintiffs' businesses;

(2) A finding that the defendants were guilty of contempt was warranted;

(3) Noise from the playing of the enumerated machines which was entirely within the control of the defendants and would be appreciably heard in the stores of the plaintiffs, and not the position of the machines upon which the records were played, was the injurious thing against the continuance of which the injunction spoke.

After the issuance of the final decree in the suit above described, it appeared that the defendants used on their premises a radiophone with a trumpet called a " magna vox," the noise of which was at times loud and unpleasantly noisy, roaring and rasping when out of adjustment, and that perhaps fifty per cent of the time it was in operation it did emit noises which were plainly audible on the premises of the plaintiffs. *Held,* that the use of the radiophone to throw sounds upon the premises and into the stores of the plaintiffs was a palpable invasion of the spirit, if not of the letter of the decree.

Courts will not permit defendants to evade responsibility for violating an injunction, by doing through subterfuge a thing which, while it is not in terms a violation of the injunction, nevertheless is of the same effect in that it accomplishes substantially that which they were enjoined from doing.

BILL IN EQUITY, filed in the Superior Court on July 21, 1920, to enjoin the defendant, its officers, agents, servants and employees from playing or permitting to be played either in the doorway or entrance outside of its premises or inside the store premises near the door or doorway any records on a talking machine, victrola, graphophone, phonograph or grafonola in such manner as to cause noise produced from the playing of such records to be audible or heard in any part of the respective premises occupied by the plaintiffs, and for damages.

The suit previously was before this court on an appeal by the defendant Rosen Talking Machine Company from interlocutory decrees entered by *Sisk*, J., and by *Sanderson*, J., overruling the plaintiff's demurrer to the bill and its exceptions to the master's report, and by both the plaintiffs and that defendant from a final decree enjoining the defendant, " its officers, agents, servants and employees," substantially as prayed for; and the decrees were affirmed by a decision reported in 241 Mass. 245. After rescript, on May 17, 1922, the final decree described in the opinion was entered.

On July 7, 1922, the plaintiffs filed the petition, described in the opinion, seeking to have the defendants Rosen Talking Machine Company, Sol M. Sugerman, Ben H. Sugerman and Lillie E. Sugerman adjudged in contempt.

The petition was referred to a master. Material findings by the master are described in the opinion. The plaintiffs excepted to findings and rulings by the master in substance to the effect that there had been no violation of the final decree according to his definition of the word " appreciably " as used in the decree, also because the master found that there was no substantial interference " with the comfort or enjoyment of life by the plaintiff " and because, referring to the use of a radiophone, the master ruled " as a matter of law that its use was not a violation of the final decree in this case since apparently the decree enjoined the playing of records on a talking machine and the defendants did not play the records although it must be admitted that the effect produced was substantially the same as if the records were played on a graphophone located in the window."

The exceptions above described were heard by *Sanderson,* J., and were sustained, and he adjudged all of the defendants except Lillie E. Sugerman guilty of contempt and ordered that each of them thus adjudged guilty pay a fine of $100. He then suspended the sentences until further order of court and reported the case on the matter of the petition for contempt to this court for determination.

*L. Marks,* for the defendant.

*J. M. Hoy,* (*S. Gottlieb* with him,) for the plaintiff.

PIERCE, J. This case came before the Superior Court on the petition of Frank F. Stodder and Charles Hurwitz that the defendants Rosen Talking Machine Company, Sol M. Sugerman, Ben H. Sugerman and Lillie E. Sugerman be adjudged in contempt of court for failure to obey and comply with the terms of the final decree and injunction entered in the Superior Court, after rescript from the Supreme Judicial Court affirming the final decree previously entered in the Superior Court. The case in the Supreme Judicial Court is reported in 241 Mass. 245.

The final decree, after rescript, ordered, adjudged, and decreed, " That the defendant corporation, its officers, agents, servants and employees be and they hereby are forever enjoined and restrained from playing or permitting to be played either in the doorway or entrance outside of its store premises, No. 11 and 11A School Street, Boston, Mass., or inside the store premises near the door or doorway of the said store, any records on a talking machine, victrola, graphophone, phonograph, or grafonola in such a manner as to cause the noise produced from the playing of records on said victrolas, talking machine, graphophone, phonograph, or grafonola to be appreciably audible or heard in any part of the respective places of business occupied by the plaintiff Frank F. Stodder at 10 and 14 School Street, Boston, and the plaintiff, Charles Hurwitz, at 12 School Street, Boston."

The defendants appeared and filed answer to the petition, wherein they denied that they or any of them " have in any manner failed to comply with the orders and terms of the final decree entered in this case; " and also answered " . . . that the respondents and each of them have in all respects

carefully observed and performed the decree in each of its several provisions respecting the rights of the respondent Talking Machine Company to play the graphophone ' either in the doorway or entrance of its store premises ' or ' inside the store premises near the doorway of the said store; ' " and " that the playing of the graphophone in the manner and form that the same has been played since the entry of the final decree has been in accordance with advice given to it by its counsel; that the playing of the said graphophone in the manner recommended by the said counsel was, it was advised, a compliance with said decree and that it has in all respects only operated the aforesaid graphophone in the manner advised by its counsel."

Upon return of the order of notice upon this petition for contempt, and after hearing, the case was referred to a master " to hear the parties and their evidence on the question of whether or not the decree has been violated by the defendants or any of them, the master to find the facts and report them to the court." The master heard the parties and their evidence, pursuant to the interlocutory decree appointing him master, and duly made his report. The court by an interlocutory decree sustained certain exceptions of the plaintiff to the report and confirmed the report, except in so far as it is affected by the decree sustaining the said exceptions. The court thereupon found and adjudged the defendants Rosen Talking Machine Company, Sol M. Sugerman and Ben H. Sugerman guilty of contempt, and the defendant Lillie E. Sugerman not guilty; and sentenced each of the defendants Rosen Talking Machine Company, Sol M. Sugerman and Ben H. Sugerman, to pay a fine of $100. At the request of the defendants, and by agreement of the parties, the court suspended the said sentences and reported the case for the consideration of the Supreme Judicial Court upon the record in the original case, the rescript of the Supreme Judicial Court in said case, final decree after rescript, the petition for attachment for contempt and the answer of the defendants thereto, the report of the special master and the plaintiffs' exceptions thereto, and the memorandum of the trial judge of his findings, rulings, and order on the report of the special master.

The master found that the defendants Sol M. Sugerman and Ben H. Sugerman admitted full knowledge and notice of the injunction; that " after the final decree . . . [they] consulted their attorney and that thereafter they went ahead with full knowledge of the provisions of the final decree and advisedly took whatever steps were taken."

The master found with regard to the number of times which the machine has been played since the decree as compared with the number of times before the decree, that " it has been played since the decree about one half as much as before the decree." With regard to the intensity of the sound since the decree in comparison with the intensity of the sound before the decree he found that " the sound has been generally softer; " that there has been some variation " in the intensity of the sound, depending on the variety of the selection played and the amount of the traffic on School Street; " that " since the final decree the softest needles have been used in the graphophone; " that before the decree the defendant used a louder needle; that on some occasions since the final decree " pieces have been played in such a way that the sound produced and heard in the plaintiffs' places of business has been equal in volume and intensity to the sound heard on some occasions prior to the final decree, but the sounds produced on these occasions prior to the final decree with which comparison is here made were not the loudest sounds produced before the final decree; " that since the final decree " the loudest sounds produced have been equivalent to the medium sounds before the final decree; " that in the intervals between the distracting noises of traffic " with the softest needle which could be provided, pieces of a loud or noisy character or pieces wherein the human voice rises to a high pitch could be plainly made out even in the rear of Mr. Stodder's store, although not every note could be heard, especially when the music or singer fell into a softer strain."

With the consent of the parties, the master took a view of the premises and made a test of the operation of the machine with different needles. As a result of that test counsel agree that " at least one of the records that was played with a

fibre needle which is supposed to give a very soft tone, could be heard in Mr. Stodder's store, even over as far as the corner of the store." They further agree that, " out in front of Mr. Stodder's store on the sidewalk with the distracting noises of the street, one could not hear the same pieces as well as they could be heard if one went to the rear of the store and inside." The master states that he considers the reason for this to be that standing on the sidewalk one is met with noises of greater volume than the graphophone but not of the same intensity, and that the intense sound carries farther. Counsel further agree that some part of every piece played on the graphophone on the day of the test was heard in Mr. Stodder's store, regardless of the needle used; and the master found such to be the case. The master found " that the average selection played with a soft needle, being played under the ordinary conditions of traffic on School Street, created a sound which was perceptible in Mr. Stodder's store, but did not amount to such substantial proportions that . . . it would interfere with the comfort of and enjoyment of life by the plaintiffs."

The finding of the master, that the created sound did not amount to such substantial proportions that it would interfere with the comfort and enjoyment of life by the plaintiffs, affords a complete defence to and exoneration from the charge of contempt, if the words " appreciably . . . heard " of the decree are to be taken in the sense that noise may be produced at the places named in the decree, by means of the machines described in the decree, if the sounds so produced do not substantially and unreasonably interfere with the physical comfort of the plaintiffs. In support of such an interpretation and definition of the words " appreciably . . . heard " as used in the decree, the defendants quote the finding of the master in the original case " that the injury or discomfort caused the petitioners and their employees is out of proportion to the advantage accruing to the defendant in the playing of the machine as it is played over what would accrue to it if it were played in such a way that it could not be heard or appreciably heard in the petitioner's place of business. If it is so played as to be only slightly

heard inside the petitioner's place of business, it would not materially affect them or the success of their respective businesses;" and argues therefrom that the word "appreciably" as used by the master and in the final decree was used therein to indicate that some concession to the necessities of the parties as to noise must be made by the plaintiffs, and some concession to the plaintiffs conferred by the defendants. However reasonable a decree might have been which restrained only a degree of noise which materially and injuriously affected the business of the plaintiffs, it is sufficient to say that the decree which the defendants were required to obey at their peril did not in terms or by necessary implication so provide.

The decree did not inhibit the use of the machines to the extent that no noise, no sound from the playing of records, would enter the plaintiffs' premises; and it did not permit the issuance of such noises if they did not cause substantial harm to the business of the plaintiffs or to their reasonable comfort and enjoyment of life. It pointed out in the words "appreciably audible or heard" that the defendants should not play the records upon any of the machines in a manner that caused the noise of the records to enter the premises of the plaintiffs, in such volume and intensity as to be there recognized by the senses as noises produced by the playing of records on the defendants' premises; that is, it should not be "appreciably audible or heard in any part of the respective places of business" occupied by the plaintiffs.

The master further found that between June 9 and June 30, 1922, which interval of time was after the final decree, the defendants, on each day for one half hour between three and four of the afternoon, operated a radiophone from the window in their building, which is twelve feet horizontally above the doorway or entrance outside their store at No. 11 and 11A School Street; that the mouth of the trumpet, called a "magna vox," was pointed for three or four days directly toward the Stodder store, and afterward was pointed toward Washington Street from a window sixteen feet nearer Washington Street; "that the noise coming from this devise was at times loud and unpleasantly noisy, that it sometimes

emitted a roaring or rasping noise when out of adjustment, and that perhaps fifty per cent of the time it was in operation it emitted noises which were substantially audible in the premises of the plaintiff." It is plain the noises were appreciably audible within the terms and intent of the decree; and equally plain that the defendants are guilty of contempt, as the court found, if the terms of the decree are broad enough to cover and restrain the emission of sounds produced by the operation of the radiophone, which put out such sounds with the same effect upon the plaintiffs as would result from the operation of the machines at the identical place stated in the decree.

Noise from the use of the enumerated machines which was entirely within the control of the defendants and would be appreciably heard in the stores of the plaintiffs, and not the position of the machines upon which the records were played, was the injurious thing against the continuance of which the injunction spoke. The use of the radiophone to throw the sounds upon the premises and into the stores of the plaintiffs was a palpable invasion of the spirit, if not of the letter, of the decree. Courts will not permit defendants to evade responsibility for violating an injunction, by doing through subterfuge a thing which is not in terms a violation, yet produces the same effect by accomplishing substantially that which they were enjoined from doing. *Gibbs* v. *Morgan*, 12 Stew. 79. *Ex parte Miller*, 129 Ala. 130. *Loder* v. *Arnold*, 15 Jur. Part I, 117. *Campbell* v. *Tarbell*, 55 Vt. 455, 461.

It results that the order of the Superior Court is affirmed.
*Ordered accordingly.*