DRAPER BARTLETT and EDDIE KING v. HERSCHEL O. MOATS, *et al.*

162 So. 477.
Division B.
Opinion Filed June 13, 1935.

62

*George Palmer Garrett,* for Appellants;
*Dickinson & Dickinson,* for Appellees.

## STATEMENT OF FACTS.

That the opinion which has been prepared by a majority of the Court may be understood, we preface the same by a a statement of facts as gleaned from the record and as stated in Appellants' brief, which is conceded to be a correct statement by the appellees;

The various plaintiffs are the owners of certain properties in Waterwitch Club Subdivision. In said subdivision there are seven dwelling houses. Said subdivision is strictly a residential section of community, there being no business houses, stores, factories, or other buildings located therein except a club house. The club house and three tennis courts are located on Lot 10. It was the intention of the owners and promoters of said subdivision that said subdivision should be used solely for the pleasure and amusement of the residents of said subdivision and their guests. One of the seven dwelling houses is owned by the plaintiff, Sumner G. Rand, and Mary Rand, his wife, and is located approximately 100 feet from the tennis courts and club house. One of the said seven dwellings is owned by Herschel O. Moats and Vivian D. Moats, his wife, and is located approximately the same distance from the said tennis courts and club house. One of the said dwellings is owned by John Amman and is located approximately 350 feet from

the said tennis courts and said club house. One of the said dwellings is owned by Draper Bartlett, one of the defendants, and is located approximately 150 feet from the tennis courts and club house. One of the said dwellings is owned by J. F. Garrett and is located approximately 150 feet from the said tennis courts and club house. One of the said dwellings is owned by C. O. Saunders, and is located approximately 600 feet from said tennis courts and club house. One of the said dwellings is owned by Carl Bauman and is located approximately 450 feet from said tennis courts and club house. Recently the owners of said subdivision, without the consent and knowledge of the plaintiffs, sold and conveyed said club house and tennis courts to Percy W. Brooks and his wife, who are now the owners thereof and the defendant, Draper Bartlett, has recently rented or leased said premises, namely the said Lot 10 of Waterwitch Club Subdivision, from the said owners and has taken possession of the said premises and is making use of the property in the manner hereinafter set out.

On one of the tennis courts the defendants have erected or caused to be erected and are now maintaining an open air dance floor or pavilion and have surrounded the same with poles on the top of which are attached palmetto leaves and Spanish moss, upon which are strung electric lights of the type used to adorn Christmas trees, and have erected at the edge of the dance floor an unsightly lean-to for the seating of an orchestra, and around the dance floor have placed tables and chairs to be used by their patrons and dancers.

On or about the 19th day of July, 1934, the defendants, or one of them, employed a dance orchestra and held a dance on said premises, to which the public at large was invited and an admission charge of the sum of 25c per person

was made. Since said date, the defendants have held several dances, not less than two dances each week. Said dance floor and night club is open to the public. Each time a dance is held a large number of patrons and guests congregate on the premises to dance and drink. The defendants furnish music made by a band or orchestra. The defendants have named and advertised said public dance pavilion as "The Dream Garden" and the bar room as "The Ship's Bar" and have erected a large electric sign at the side of South Fern Creek Drive and other signs along the highway to attract patrons thereto. When the said dances are held the orchestra begins playing its instruments about 9 o'clock and continue to play until 1 and 2 o'clock the next morning. As the dance or evening progresses, the noise from the orchestra gets louder and louder and at times the members of the orchestra, as well as the dancers, yell, shout and sing. The patrons and dancers begin to arrive about the time the orchestra begins to play and continue to arrive and depart until it stops. The patrons park their automobiles around and upon said premises. During the evening, such patrons as desire so to do, purchase alcoholic drinks and beverages. Many patrons become intoxicated and create much noise and confusion by talking, yelling, singing and laughing. When the patrons and dancers leave the premises many are intoxicated and much noise and disturbance is caused by starting their automobiles and blowing horns, yelling, singing and talking. Many of the patrons drive recklessly at great speed up and down Fern Creek Drive, endangering the lives of other people who may be upon the highway and disturb and annoy the residents of the community and these plaintiffs. The noise made by the orchestra, the patrons, dancers and cars is continuous from the time the orchestra begins to play until

it stops and can be heard plainly in the homes of the plaintiffs to such an extent that it seriously affects the comfort of the plaintiffs in their homes and prevents plaintiffs from sleeping at the time when it is customary for them to retire. The establishment and maintenance of the said bar room and dance pavilion greatly depreciates the value of the plaintiffs' homes for residential purposes and prevents the sale thereof at their real value. The operation and maintenance of the bar room and dance pavilion constitute a nuisance and should be enjoined. Plaintiffs pray for an injunction against the defendants' continuing and maintaining the said dance pavilion.

BUFORD, J.—This case is before us on appeal from a final decree awarding injunction.

The bill of complaint sought to enjoin the operation of a public dancing pavilion located on a certain lot in a rural subdivision. The findings and judgment were as follows:

"*One.* That the Court has jurisdiction of the subject matter and the parties to this cause.

"*Two.* That the equities are with the plaintiffs and against the defendants.

"*Three.* That the operation of a dance hall or dance pavilion twice a week in the evenings or at any time by the defendants upon Lot 10 of Waterwitch Club Subdivision as per plat thereof recorded in plat book "K," page 69 of the public records of Orange County, Florida, as alleged in the bill of complaint and as shown by the evidence (during the hours of rest) constitutes a private nuisance as to the plaintiffs, because the community is strictly residential, and should be enjoined, although the Court finds that said dance hall or pavilion has been conducted with more order and decorum than an ordinary public dance hall is conducted,

if not with the most possible order and decorum for a public dance hall.

"It Is Therefore Ordered, Adjudged and Decreed as follows:

"*First*: That the motion to dismiss incorporated in the answer be, and the same is hereby overruled and denied.

"*Second*: That the defendants be and they are hereby permanently and perpetually enjoined from maintaining or operating a public dance hall or dance pavilion on Lot 10 of Waterwitch Club Subdivision, as per plat thereof recorded in Plat Book 'K,' page 69 of the public records of Orange County, Florida, and from conducting or holding public dances upon said premises.

"*Third*: That the defendants be, and they are hereby perpetually and permanently enjoined from hiring, employing or in any way procuring any orchestra, band, musicians, musical instruments or machines to play or furnish music for public dances or dancing upon said premises.

"*Fourth*: That the defendants be and they are hereby permanently and perpetually enjoined from using said premises or permitting said premises to be used in any manner, or for any purpose that will unreasonably disturb or annoy the plaintiffs in the use and enjoyment of their respective homes.

We think that the creation of loud and disturbing noises, in the night time especially, in residential sections may be enjoined by chancery decree as a nuisance, but, of course, each case must stand on its own merit and no general hard and fast rule may yet be laid down stating just what noise may constitute a nuisance and what will not.

We quote from U. S. Law Review, August, 1931, page 409, *et seq.*:

"While it has been held that singing at reasonable hours,

in connection with the giving of vocal lessons, is not a nuisance *per se,* it may amount to a nuisance in fact in particular circumstances. In Motion v. Mills (13 Times L. R. 427), the defendants conducted a vocal studio in a business neighborhood, next door to the plaintiffs, a firm of auctioneers. The plaintiffs asserted that their business involved much reckoning and keeping of accounts, and that inaccuracies, due to distractions from noise, might entail serious consequences. They also alleged that the sound of ambitious pupils attempting to scale high notes nearly drove plaintiffs and their clerks mad, and seriously interfered with the proper performance of their work. The court accepted plaintiff's view of the case and granted an injunction. In Gilbough v. Westside Amusement Co. (64 N. J. Eq. 27) Vice-Chancellor Pitney of New Jersey, writing long before the advent of the radio, expressed the general rule of law in respect to noise saying: That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to seek the preventive remedy of the court of equity is thoroughly established. The reason why a certain amount of noise is or may be a nuisance is that it is not only disagreeable but it wears upon the nervous system and produces that feeling which we call 'tired.' That the subjection of a human being to a continued hearing of loud noises tends to shorten life is, I think, beyond all doubt. Another reason is that mankind needs both rest and sleep, and noise tends to prevent both.

"That case dealt with an amusement park in a residential neighborhood. A closer analogy to the radio is afforded by the case of Stoder v. Rosen Talking Machine Co. (247 Mass. 60, 141 N. E. 569; s. c., 241 Mass. 245). It there appeared that the defendant played a phonograph in front

of his store for the purpose of attracting trade. This was held to constitute a private nuisance as to the plaintiff, a neighboring shopkeeper.

"It is also well settled that the fact that the musical sounds may be generally of an agreeable character, or not necessarily disagreeable, is no ground for denying an injunction, if they are in fact obnoxious under the particular circumstances of the case. In the leading case of Soltau v. DeHeld (2 Simons, n. s. 133), a monastic order of the Catholic Church had established a chapel adjacent to the premises occupied by the plaintiff. It appeared that a set of six bells, of unusual size and weight, were installed and were rung every day at frequent intervals, commencing on some days as early as five o'clock in the morning and continuing until ten in the evening. Witnesses residing at some distance testified that the chimes were pleasant, one witness describing them as a 'positive gratification' when heard from afar. It was held that the fact that the sounds might be pleasurable to persons somewhat removed from them did not make them any the less a nuisance to the plaintiff.

"As in the case of nuisance generally, a nuisance created by sound may be either public or private, depending upon the number of persons affected. To constitute a public nuisance warranting criminal prosecution, it must appear that the act is one which injuriously affects a substantial number of persons. It has been held, however, that the number need not be very great. (People v. Rubenfeld, 54 N. Y. 245, 172 N. E. 485). The case last cited arose under the provisions of the New York penal law (Sec. 1530) defining a public nuisance, in part, as the doing of an act which annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons, the section being substantially a codification of the common

law rule with respect to indictable nuisances (People v. Borden's Condensed Milk Co., 165 N. Y. App. Div. 711, aff'd, 216 N. Y. 658 mem.) The defendant conducted a dance hall in a populous neighborhood which was in use every evening in the week, the music and festivities frequently continuing until dawn. Witnesses testified that the sounds could be heard about a block away. In holding that the defendant was guilty of maintaining a public nuisance, the court said: To be reckoned as 'considerable,' the number of persons affected need not be shown to be 'very great.' Enough that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community.' "

In 46 C. J. 699, the author says:

"A dance hall is not a nuisance. It is not classified as a nuisance *per se* and it is not *per se* a public nuisance. But a dance hall may become a nuisance by reason of surrounding circumstances, as for instance, by reason of the character of the locality in which it is operated, entitling an adjoining owner or occupant to injunctive relief, although such hall or pavilion is orderly and well regulated as a place of amusement."

Bielecki v. Port Author, Tex. Civ. App. 2 S. W. (2nd Ed.) 101, it was held: "A public dance hall operated within a residence district is intrinsically and inevitably a nuisance."

To the same effect was the holding in Phelps v. Winch, 309 Ill. 158, 140 N. E. 847, 28 R. L. R. 1169.

2 Wood on Nuisance, page 840, Sec. 632, holds:

"The noise of musical instruments kept up for such periods of time and at such hours of the day or night as to be really annoying to persons of ordinary sensibilities or

that produces other actual ill results is a nuisance and any noise, whether of musical instruments, the human voice, discharge of guns, or however produced, that draws together in the vicinity of a person's residence or place of business large crowds of noisy and disorderly people is a nuisance."

. The author cites Attorney General v. Sheffield Gas Co., 19 E. L. & Eq. 649; Inchbald v. Harrington, L. R. 4 Ch. App. 386; Walker v. Brewster, L. R., 5 Eq. Cas. 21. See also Seligman v. Victor Talking Machine Co., 71 N. J. Eq. 697, 63 Atl. 1093; Reillye v .Curley, 75 N. J. Eq. 57, 71 Atl. 700, 138 Am. St. Rep. 510; notes 17 L. R. A. (n. s.) 288; 19 Am. Cas. 993; 20 R. C. L. 446; Shaw v. Queen City Forging Co., 7 Ohio N. P. 254; 10 Ohio S. & C. P. Dec. 107; McCann v. Strong, 97 Wis. 551, 72 N. W. 1117; Peacock v. Spitzelberger, 16 Ky. Law Rep. 803, 29 S. W. 877; Roukovina v. Island Farm Creamery Co., 160 Minn. 335, 200 N. W. 350, 38 A. L. R. 1502.

It could serve no useful purpose for us to review the evidence. We think there is sufficient basis in the record to support the finding that the operation of the dancing pavilion constituted a private nuisance and should be abated. But, the record does not support the decree in full and it should be modified by confining its application to those hours of the night which are commonly held and considered to be the hours of rest, that is from the hour in the evening when the people in that community are accustomed to retire for the night on through the balance of the night.

. The record does not disclose that the operation of the pavilion causes any annoyance or is a private nuisance at any other time except when conducted during the hours when the people residing in that residential section are accustomed to take their nightly rest. Neither is it shown by

the record that dances when held within the house situated on the lot create any nuisance or annoyance while conducted in the house.

It is true that the evidence shows the existence of some annoyance by reason of the passing of automobiles at late hours of the night. But it is not shown that the automobiles did not operate on a public highway where the drivers of such automobiles have the right to operate them in a lawful manner.

We therefore, hold that the decree should be modified as above suggested and, when so modified, it be affirmed.

So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., dissents.

BROWN, J., (concurring).—I think this case is a very good illustration of the good sense and fairness underlying the old legal maxim, to the effect that one should so use his own as not to injure another's property. Of course this is a broad and general rule which cannot be made to fit all cases, but I think this case comes within the spirit of it.

DAVIS, J. (dissenting).—In this case the facts are that the complainants below purchased property in a residential sub-division next to a country club property upon which a country club and tennis courts had already been constructed at the time of their purchase. They purchased at a time, also, when the country club was already in use for dances and other entertainments that had been inaugurated in the country club property long before complainants moved into the neighborhood.

Neither of the complainants in this case set-up or claim any special contractual or property right by virtue of any

restriction in a deed, or other asserted right under any agreement limiting the use of defendants' country club property which had betn sold in the first instance without reservation in the conveyance, to a purchaser who leased it to lessees for the purpose of permitting the lessees to use it for paid entertainments, consisting of dances held there twice a week, which dances are usually conducted on an open tennis court, at least two hundred feet away from the nearest lot of complainants' residential lot owners. The object of the suit below was to enjoin the use of the country club for dance purposes on the ground that such use was and is a public nuisance.

The Chancellor, in granting a perpetual injunction denying the right of defendants below to continue in the enjoyment of their property for the principal purpose for which it had been constructed and was being used at the time complainants below decided to buy their own particular lots in the same neighborhood subdivision, specifically held as follows:

"THREE: That the operation of a dance hall or dance pavilion twice a week in the evenings or at anytime by the defendants upon Lot 10 of Waterwitch Club subdivision, as per plat thereof recorded in Plat Book "K," page 69, of the public records of Orange County, Florida, as alleged in the bill of complaint and as shown by the evidence (during the hours of rest) constitutes a private nuisance as to the plaintiffs, because the community is strictly residential, and should be enjoined, although the Court finds that said dance hall or pavilion has been conducted with more order and decorum than an ordinary public dance hall is conducted, if not with the most possible order and decorum for a public dance hall."

In answer to the bill of complaint, the defendants below averred as follows:

"They admit that within their rights as lessees from the owners of the said premises, Percy W. Brooks and Mary Margaret Brooks, his wife, they are conducting a very respectable place of amusement, consisting of a dance floor on the middle, concrete tennis courts adjacent to the Club House. Dances are conducted here only twice a week, between the hours of approximately 10 o'clock in the evening to 1 o'clock the following morning. The music is of the highest class, consisting of the best orchestra now in Orange County. The guests are the best people in Orange County. There is very little noise which results from the maintenance of the said place of amusement. The guests conduct themselves with great propriety. The lights are subdued. The fact that the orchestra plays in the open and the dances are conducted in the open, greatly reduces the conductivity of the noise of the music and dancing, and the music, the noise and activity is hardly, if at all noticeable at or near the residence of Herschell O. Moats and his wife, or that of Sumner G. Rand or that of John Ammann. The Defendants make it their business to see that the said amusement activities are conducted modestly, appropriately and without unnecessary annoyance or interference with the convenience of the neighbors or the community. The said dance amusements are not conducted against the morals of the community, or injurious to the public morals or decency of the community. As a matter of fact, of the seven families living in the neighborhood, four, viz.: all but the plaintiffs, are agreeable to the continuance of the place as a place of amusement as aforesaid and have no thought that the same is in anywise a nuisance, public or private. J. W. Garrett, one of said neighbors, has stated that he has no

objection to the conduct of the dances as now conducted
and Mr. Saunders, another of said neighbors, has so stated,
and the defendant's Draper Bartlett's family, suffers no in-
convenience from the present conduct of the amusements.
Mr. Baumann, another of said neighbors, is not in any way
damaged or annoyed by said amusements. These make four
of the seven families in the neighborhood. No alcoholic
beverages are served outside of the Club House and the
Club Bar, which is complained of, is open only to members
of the Club. The said Draper Bartlett has the usual licenses
issued by the County of Orange and State of Florida, and
the United States Government, entitling him to dispense such
liquors as are permitted by the law and these licenses are in
force at the present time. The Sheriff of Orange County
has never complained to the defendants, or either of them,
with reference to the conduct of the said place of amuse-
ment. Almost no liquor is sold on the premises, the cus-
tomers generally bringing their own liquor and being fur-
nished ginger ale and cracked ice. A constable is in at-
tendance at each dance to keep order. The place has re-
cently been engaged and used by the Junior Chamber of
Commerce, the Kiwanis and a girls sorority. There are no
slot machines on the premises. No sales of liquor are made
to minors in violation of the law. The whole purpose and
intent of the place of amusement would be wholly destroyed
if the facts stated in the bill of complaint are true. The
whole effort of the defendants has been to build up a good-
will among the highest class of citizens of Orange County,
Florida, for the maintenance of a respectable, modest, ap-
propriate, and inexpensive place of amusement to which they
can resort without fear of being annoyed or inconvenienced
by the existence of any of the general facts with regard to
misconduct related in the bill. So far, under its present con-

duct, the place of amusement has created very favorable comment from persons in the locality and among the persons other than the plaintiffs who reside in or near the community involved. There are no representations or restrictions or provisions effective or in writing in existence restricting the use to which any lot in said Waterwitch Subdivision may be put."

The evidence in this case fully sustains every material fact averred in the defendants' answer as hereinbefore quoted, and indeed, the Chancellor practically so states in that part of his decree which is quoted hereinbefore in this opinion.

A nuisance may be abated but private property may not arbitrarily be destroyed under the guise of suppression of a nuisance. *In re:* Seven Barrels of Wine, 79 Fla. 1, 83 Sou. Rep. 627, Injunction lies to prevent conduct of a nuisance only when it is limited to unlawful acts. It is not available as a means of preventing lawful acts, inasmuch as injury occasioned by an actionable nuisance can be compensated for in damages at the suit of the party affected thereby. It is also the rule that where injury complained of results from acts that are not a nuisance *per se,* the court, in granting an injunction, should never grant an injunction in such form as absolutely to prohibit the defendant's beneficial enjoyment of his property. See: 20 R. C. L., pages 481-482, par. 94.

Florida is a tourist state—the nation's playground. While peaceful repose should be available to those who wish to retire with the chickens and arise with the morning sun, there are restricted properties that can be purchased under a specific contract assuring such rights. But in the absence of assertion of some contract right, property restrictions contained in muniments of title, or invocation of lawful police regulations limiting one's right to dance on his own

property until 1 A. M. twice a week, there is no ground for intervention of a court of equity in a case like that now before us. There is no allegation in the bill of complaint that complainants below ever go to bed before 1 A. M. on the dance nights complained of. Their sole postulate for relief, as I construe their bill of complaint, is not the protection of their personal right to a reasonable amount of sleep on their own adjoining premises, but is an attempt, through injunctive relief in a court of equity, to convert an unrestricted subdivision into a restricted one on the hypothesis that because there are seven property owners in the neighborhood who have devoted their lots to residence purposes a judicial restriction should be placed on defendant's property at the instance of four of them in order to keep complainants' properties from being depreciated in value by the presence of a dance-hall in the same neighborhood.

In my view the issuance of any injunction in this case is unwarranted in law. The result thereof is in legal effect, to work a judicial deprivation of the right of one property owner to use his property as he pleases merely because of the fact that a neighboring property owner, with no greater property right than the first under the Constitution or laws of this State, has elected to put his particular property to uses for purposes that are not deemed consistent with the uses that defendant has elected to put his own property to.

The imposition of regulations for the suppression of unnecessary noises and objectionable *lawful* uses of particular properties is not for the courts, but is for the Legislature to deal with by zoning laws or otherwise. So unless the complainants in this particular case can first point out some contractual right, or to some easement or servitude, that confer upon them a legal or equitable right to intermeddle

with the use that their neighbors elect to put on their property, they are entitled to no relief of the kind here granted. Zoning laws would be entirely unnecessary if every property owner could by resort to injunction have enforced his peculiar wishes on his neighbors as to how the latter shall enjoy their properties by using them for purposes of an inconsistent nature.

My view of the law is that so long as the use of one man's property is *lawful,* no neighboring property owner has either the legal or the equitable right to plead that it is an *enjoinable* nuisance for an adjoining property owner to use his property in any way that he pleases, so long as the latter owner violates no restrictive covenants, invades no servitudes nor easements, nor transgresses any ordinances or law made for the common welfare to regulate all alike, and applicable to the people of the locality in common.

I therefore dissent.