A. T. KNOWLES, Appellant, v. CENTRAL ALLAPATTAH PROPERTIES, INC., and BUCKINGHAM INVESTMENT COMPANY, Appellees.

198 So. 819
Division B
Opinion Filed November 22, 1940

124

*Hendricks & Hendricks,* for Appellant.

*Twyman Brothers* and *James M. McCaskill,* for Appellees.

CHAPMAN, J.—The record in this case discloses that A. T. Knowles in 1923 acquired a three-acre tract of land, then outside the City of Miami but subsequently taken into the City, and began the operation of a veterinary hospital in a frame building then on the tract. The business of boarding pet animals, cheifly dogs, was maintained in connection with the hospital. The business grew and it became necessary to enlarge the buildings and work or employment was given several members of the Knowles family and other assistance was obtained from time to time. The capacity for caring for animals prior to the enlargement of the hospital was 105 dogs and by the improvements the total capacity thereof was increased to 178 dogs in February, 1938.

The hospital of the defendant is now located bewteen 29th and 30th Streets Northwest and faces 17th Avenue but about 135 or 140 feet west of the Avenue. The defendant at one time kept on the property milk cows, ponies, cats and peafowls, and charges were preferred against him for the violation of some of the ordinances of the City of Miami in connection with these animals. The defendant maintained on the property two cemeteries in which dogs were

buried and approximately 80 dogs were buried in one cemetery and 300 in the other on the three-acre tract. The graves of these buried dogs are marked with upright crosses.

Adjacent to and north of the hospital tract is a ten-acre tract in the form of a square and in the year 1937 plaintiffs acquired title thereto. The prior owner had subdivided the property into residential lots, except those fronting on 17th Avenue, which were designated as business lots. The property was resubdivided into residential lots and building restrictions adopted to the effect that each lot should contain a single-family dwelling, and shortly thereafter began the construction of homes on the lots. There is a sharp conflict in the testimony as to the number of homes within a radius of 1,000 feet of the hospital in 1923. Some of the witnesses place the number at some seven or eight, while another places them at between 25 and 50. Apartments and residences at the present time are fixed at the definite number of 83.

The capacity of the hospital was increased by enlargement thereof, without a lawful permit, so it is contended, and the property is now being used contrary to the following ordinance provisions:

"Section 5514. (8-2-03-01) Veterinary Hospital Location. It shall be unlawful for any person to keep within the City of Miami within 1,000 feet of any building used for human occupancy, any dogs for treatment by a veterinarian or for detention in any public kennel. Such location shall comply with the requirements of the Zoning Code of the City of Miami."

"Section 6219—Section 2—Prohibited Uses—R-4 Districts: Nothing shall be allowable on premises that shall in any way be offensive or noxious by reason of the emission of odors, gases, dust, smoke, vibration or noise. Nor shall anything be constructed or maintained that would in any way

constitute an eyesore or nuisance to adjacent property owners, residents or to the community."

"Section 6229—Non-Conforming Uses—The lawful use existing at the time this Ordinance takes effect may be continued, even though it does not conform with the provisions hereof. Any building existing at the time this Ordinance takes effect may be altered or reconstructed, providing such alteration does not cost to exceed its assessed valuation, and providing also that it is not enlarged beyond ten (10) per cent of the size of such building on the effective date of this Ordinance, unless changed to a conforming use. Also providing all other regulations governing the new uses are complied with."

"Any non-conforming building damaged more than seventy-five (75) per cent of its then fair market value above the foundations at the time of damage by fire, flood, explosion, earthquake, wind, war, riot, or Act of God or man, shall not be reconstructed and used as before such calamity, but if less than seventy-five (75) per cent damaged, it may be reconstructed or used, provided that it be done within six (6) months of such calamity."

The special permit under which defendant enlarged his hospital is Resolution No. 13932, viz.:

"A resolution to grant the application of Dr. A. T. Knowles for a permit to erect an additional building at No. 2936 N. W. 17th Avenue, be, and the same is hereby granted."

The authority for the adoption of the resolution is Section 6238 of the Code for the City of Miami and is viz.:

"That the City Commission of the City of Miami shall, from and after the passage of this Ordinance, be and it is hereby declared a Board of Adjustment so that where there are practical difficulties or unnecessary hardships in the way

of carrying out the strict letter of the provisions of this Ordinance, the Board of Adjustment shall have power in specific cases, after due notice, and investigation, to determine and vary any such provisions in harmony with the general purpose and intent of the Zoning Ordinance so that the public health, safety and general welfare may be secure and substantial justice done and said Board may among other matters:

"(a) Hear and decide appeals from any order, requirements, decision or determination of an administrative officer in the enforcement of this Ordinance.

"(b) Hear and decide special exceptions to the terms of this Ordinance and the authority of which is conferred upon said Board of Adjustment by this Ordinance.

"(c) Authorize upon appeal, in specific cases, such variance as will not be contrary to the public interest, when, owing to special conditions, a literal enforcement of the provisions of the Ordinance will result in unnecessary hardships, and so that the spirit of this Ordinance shall be observed and substantial justice done."

On June 8, 1938, plaintiffs below exhibited their amended bill of complaint in the Circuit Court of Dade County, Florida, praying for a restraining order against the use of the recently constructed buildings as a veterinary hospital and that the veterinary hospital unit be decreed a nuisance. An answer was filed and testimony taken and several exhibits offered in evidence by the respective parties. The special master made findings as to law and facts and exceptions thereto were filed by counsel for the parties. On final hearing the lower court entered a decree which is in part, viz.:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, A. T. Knowles, his agents and employees, be and they are hereby permanently enjoined from main-

taining on said premises any peafowls, and that the said defendant be further enjoined from maintaining or treating on said premises any dogs outside the building now occupying said premises and as now constructed."

"It Is Further Ordered, Adjudged and Decreed that the prayer for a permanent injunction against the above named defendant enjoining the use of said building for the housing or treatment of dogs within the building upon said premises be temporarily denied and without prejudice, with leave to present said cause again after the expiration of six months, with leave after such time to procure an order of reference to a master to take such further evidence upon the issues as the parties may adduce."

From the aforesaid final decree an appeal has been perfected to this Court and numerous reasons urged for a reversal thereof. Counsel for plaintiffs below (appellees here) have filed a number of cross assignments of error. These assignments are predicated largely on questions of fact settled by the chancellor in the final decree. There is no provision in the final decree appealed from as to the granting or denial of a restraining order against the maintenance and continued operation by the defendant of the dog cemetery located on the three-acre tract.

Counsel for plaintiffs below contended that the barking, yelping, scratching and growling of some sixty or sixty-five dogs at different hours, day and night, while kenneled on the three-acre tract of the defendant and the maintenance of a cemetery for the burial of dogs prevented sleep and otherwise disturbed the rest of the numerous owners and their families recently acquiring homes located within 1,000 feet of the hospital; that the loss of sleep caused by the noise of the dogs affected their health and otherwise interfered with, annoyed and disturbed them in the free use, possession and enjoyment of their property; and that the

maintenance of the hospital is a nuisance *per se*. In the case of Mercer v. Keynton, 121 Fla. 87, 163 So. 411, this Court said:

"An owner or occupant of property must use it in a way that will not be a nuisance to other owners and occupants in the same community. Anything which annoys or disturbs one in the free use, possession or enjoyment of his property or which renders its ordinary use or occupation physically uncomfortable may become a nuisance and may be restrained. Henderson v. Sullivan, 159 Fed. 46; Bohan v. Port Jarvis Gas-Light Co., 122 N. Y. 18, 25 N. E. 346; Huddleston v. Burnett, 172 Ark, 216, 287 S. W. 1013; Wright v. Lyons, 224 Mass. 167, 112 N. E. 876; Prendergast v. Walls, 257 Pa. 547, 101 Atl. 826; State *ex rel.* National Oil Works of La. v. McShane, 159 La. 723; 106 So. 252." See Bartlett v. Moats, 120 Fla. 61, 162 So. 477; 46 Corpus Juris 681-3, pars. 53, 55, 56, 58; Edmunds v. Duff, 280 Pa. 355, 124 A. 489, 33 A. L. R. 719; Stodder v. Rosen Talking Machine Co., 241 Mass. 245, 135 N. E. 251, 22 A. L. R. 1197.

Counsel for defendant below contend that the veterinary hospital was established in 1923 and the business over the years has grown and prospered; that the defendant has an investment valued at some thirty-five thousand dollars, and that the noise of the dogs does not disturb the people residing in the neighborhood; that the dogs buried on the property are placed in cypress boxes and placed in graves three and one-half feet deep and no wells have been closed in the community; that the floors of the kennels are washed daily and disinfected, and that prior to the suit at bar but little complaint was heard; that plaintiffs below desire the removal of the hospital so that the ten-acre subdivision owned by them will be enhanced in value and the welfare of the owners of recently constructed homes in the community

is a secondary consideration; that the business of the de-
fendant was fully established prior to. the development of
the community and that the legal rights of the business
should predominate over the rights of the people recently
moving into the community and the use to which the prop-
erty is employed is not a nuisance. The case of *In re:*
Seven Barrels of Wine, 79 Fla. 1, 83 So. 627, is cited and
relied upon with other authorities to sustain this position.

The question for a decision here is whether or not the
operation of the dog hospital, the boarding on an average
of 60 to 65 dogs and the noise made thereby and the burial
of the dogs on the three-acre tract constitute such a nui-
sance as will be enjoined by a court of equity. While the
ordinance of the City of Miami *supra* defines a nuisance, we
do not think it necessary for a decision of the case at bar
to bottom our conclusions on the ordinance because this
Court, in the case of City of Miami Beach v. Texas Co.,
141 Fla. 616, 194 So. 368, text p. 374, held that to consti-
tute a thing a legal nuisance, it must be so in fact, regard-
less of a declaration of an ordinance on the subject. The
Court said:

"It is generally recognized that anything which is detri-
mental to health or which threatens danger to persons or
property within the city may be retarded and dealt with by
municipal authorities as a nuisance. Under a general grant
of power respecting nuisances the municipal corporation
may declare a thing a nuisance which is one in fact, but
without express charter power, the general rule is that the
city cannot declare by ordinance that a nuisance which is not
so in fact. To constitute a thing a legal nuisance, it must
be so in fact, regardless of a declaration of an ordinance on
the subject. See McQuillin on Municipal Corporations, 2nd
Ed. Vol. 3, pages 125, 126, par. 956."

This Court, however, has held that a municipality by or-

dinance may, when it has or possesses the charter power, regulate the location of funeral homes, embalming establishments and mortuaries within defined areas of a municipality, under the police power, in the interest and convenience of the inhabitants of a city living in the vicinity of the place where the business is conducted. . See State *ex rel.* Skillman v. City of Miami, 101 Fla. 585, 134 So. 541; Hunter v. Green, 142 Fla. 104, 194 So. 379. The decaying carcasses of some three or four hundred dogs buried on the three-acre tract in cypress boxes and placed three and one-half feet underground, is, to say the least, a potential threat or menace to the health and welfare of the inhabitants residing in the immediate community. See 20 R. C. L., page 410, par. 27; 46 C. J. 696.

Rights of property are protected by constitutional guaranties. This protection cannot be construed to mean that the use thereof cannot be regulated under the police power in behalf of the general welfare. This question was discussed and settled by this Court in the case of City of Miami Beach v. Texas Co., 141 Fla. 616, 194 So. 368, text pages 375-6, where this Court said:

"While constitutional guaranties cannot be transgressed, it is well settled law that the possession and enjoyment of all rights are subject to the police power and persons and property are subject to restraints and burden necessary to secure the comfort, health, welfare, safety and prosperity of the people. See 11 Am. Jur., page 1006, par. 267. It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all property is held on the implied condition or obligation that its use shall not be injurious to the equal rights of others to the use and benefits of their own prop-

erty. The public interest is paramount to property rights. See 11 Am. Jur. page 1009, par. 268. The right of the State to regulate a business which may become unlawful is a continuing one, and a business lawful today may, in the future, because of changed conditions, the growth of population, or other causes, become a menace to the safety and public welfare and the continuance thereof must yield to the public good. 11 Am. Jur. page 1044, par. 284. The determination of what businesses are affected with a public interest is primarily for the Legislature, but is always open to judicial inquiry. 11 Am. Jur., page 1060, par. 294; Tyson & Bro. United Theatre Ticket Offices v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236. The law requires that all police regulations must be reasonable under all circumstances. The validity of a police regulation therefore depends on whether, under all circumstances, the regulation is reasonable or arbitrary and whether it is reasonably designed to accomplish a purpose falling within the scope of the police regulation. See Mutual Loan Co. v. Bartell, 222 U. S. 225, 32 S. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B 529."

In the case of Krebs v. Hermann, 90 Colo. 61, 6 Pac. (2d) 907, 79 A. L. R. 1054, the testimony showed that the defendants maintained dog kennels on their property in which were kept from 30 to 40 dogs in the winter season and 40 to 80 in the summer season and that plaintiff resided with his family near the kennels and the barkings and howlings of the dogs continuously annoyed and kept awake the plaintiff, his wife and children; that the odors from the kennels were very offensive. The court held that the maintenance of the kennels constituted a private nuisance and the plaintiff, as a matter of law, was entitled to have it enjoined. The fact that the kennels were constructed prior to the plaintiff building his home near the kennels, it was held, was not a defense to the action.

In the case of State v. Stillwell, 114 Kan. 808, 220 Pac. 1058, the facts are viz.: The defendant kept from 25 to 50 dogs on a small tract of land in close proximity to a city and in the vicinity of 30 to 40 family residences where a number of aged and infirm people lived. The owners of the homes testified that they were annoyed and disturbed in their sleep by the barking, howling and growling of the dogs. The court held that the keeping of the dogs under the circumstances constituted a nuisance and the plaintiff was entitled to enjoin it. See Singer v. James, 130 Md. 382, 100 Atl. 642; Hechelman v. Kindt, 22 Pa. Dist. R. 791, 40 Pa. Co. Ct. 277; Herring v. Wilton, 106 Va. 171, 7 L. R. A. (N. S.) 349, 117 Am. St. Rep. 997, 55 S. E. 546, 10 Ann. Cas. 66. See also 20 R. C. L. 495, 46 C. J. 702, par. 155.

The plaintiffs below, as the record title owners of certain described real property located in close proximity to the three-acre tract of the defendant, assert that the case at bar is a class suit brought in behalf of the plaintiffs and the 83 home owners and apartment house owners and families, respectively, living in the vicinity and affected by the noise made by the 60 or 65 dogs kept by the defendant and each resident is subject to the potential danger of contracting disease by the burial of some three or four hundred dogs thereon, and that the class suit is authorized by Section 14 of Chapter 140658, Laws of Florida, Chancery Act of 1931, and decisions of this Court.

It is our conclusion, after a careful consideration of the entire record, that the burial of the carcasses of some three or four hundred dogs and the permitting or allowing of some 60 to 65 dogs kept on the three-acre tract to bark, growl, yelp and scratch at all hours of the day and night interferes with the sleep, rest and comfort of the different families residing in close proximity thereto and tends to injure the health of all those affected thereby and in law

·constitutes a nuisance which the law will enjoin on application and sufficient proof made by a proper party.

The order or decree appealed from denied a permanent injunction against the use of the building on the premises for the housing and treatment of dogs, and correctly so, provided disturbing noise of the dogs complained of is thereby obviated and does not exist. This order was made and entered without prejudice. The lower court on the going down of the mandate can and will make such an order or decree as shall not be inconsistent with this opinion.

The decree appealed from is affirmed in part and reversed in part.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

CHIEF JUSTICE TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.