879 So.2d 1265 (2004)
BAL HARBOUR VILLAGE, Appellant,
v.
William WELSH, Appellee.
No. 3D03-3188.
District Court of Appeal of Florida, Third District.
August 11, 2004.
*1266 Weiss, Serota, Helfman, Pastoriza, Guedes, Cole Boniske, P.A. and Edward D. Guedes, Miami, for appellant.
Marcy I. Lahart, for appellee.
Before GERSTEN, GREEN and SHEPHERD, JJ.
GREEN, J.
Appellant, Bal Harbour Village (the "Village"), an incorporated municipality in Miami-Dade County, Florida, enacted an ordinance ("Ordinance") on June 19, 2001 that limited the number of dogs a homeowner or commercial property owner may maintain. Specifically, the Ordinance provides that "[n]o Responsible Party shall keep more than a total of two (2) dogs and/or four (4) puppies at any household in the Village or any commercial property." Village Code, § 5-7(c)(1). According to the record evidence, the Village enacted this ordinance in response to a rash of problems involving dogs within the Village, namely, dogs roaming around unleashed, documented dog bites, excessive barking and the failure of owners to clean up after their pets. At the time that the Ordinance was enacted, appellee William Welsh, a resident of the Village, already owned and housed four dogs, three rottweilers and a mixed-breed.
After the enactment of the Ordinance, the Village sought to enforce it against Welsh by citing him for repeated violations on January 15, 2002, March 28, 2002 and April 4, 2002. Despite these citations and other unsuccessful attempts to issue further citations by the Village, Welsh refused to restrict the number of dogs in his household to two.
The Village then filed the action below which sought the entry of temporary and permanent injunctive relief restraining Welsh from owning and harboring more than two dogs at his residence and for the payment of all outstanding fines and administrative costs associated with Welsh's violation of the Ordinance. The trial judge initially assigned to this case entered a temporary injunction against Welsh restricting the manner in which Welsh could maintain his dogs, but did not require Welsh to limit the number of dogs to two.
The case was then reassigned to a different trial judge and the parties filed cross-motions for summary judgment given the absence of disputed issues of material fact. At the final hearing, Welsh stipulated that the Ordinance was lawfully enacted pursuant to the Village's police power and did not contest the reasonable basis for the same. He nevertheless argued that the Ordinance could not be enforced against Village residents who owned more than two dogs prior to its enactment. The trial court agreed and entered a final judgment which, among other things, denied the Village's request for permanent injunctive relief. This appeal followed.
At issue on this appeal is whether the Ordinance, duly enacted pursuant to the Village's police power to abate a nuisance, may be constitutionally enforced against a *1267 Village resident who owned and housed more dogs than the established limit, prior to the enactment of the Ordinance. We conclude that it can and reverse the final summary judgment to the contrary.
The legislature has broad discretion to declare a particular activity to be a public nuisance and enact legislation to abate the same in the exercise of its police power. As the Florida Supreme Court has recognized:
A public nuisance violates public rights, subverts public order, decency or morals, or causes inconvenience or damage to the public generally. The Legislature has broad discretion to designate a particular activity to be a public nuisance. In the exercise of its police power the State has authority to prevent or abate nuisances, for police power is the sovereign right of the State to enact laws for the protection of lives, health, morals, comfort and general welfare.
Thompson v. State, 392 So.2d 1317, 1318 (Fla.1981).
In order to pass constitutional muster, however, all laws or ordinances enacted pursuant to the exercise of such police power must be reasonable and not arbitrary. See Knowles v. Cent. Allapattae Props., Inc., 145 Fla. 123, 198 So. 819, 823 (1940) ("The validity of a police regulation therefore depends on whether, under all circumstances, the regulation is reasonable or arbitrary and whether it is reasonably designed to accomplish a purpose falling within the scope of the police regulation."); Gates v. Sanford, 566 So.2d 47, 49 (Fla. 5th DCA 1990) ("Ordinances enacted pursuant to general police powers must not infringe constitutional guarantees by invading personal or property rights unnecessarily or unreasonably or by denying due process or equal protection of laws.").
The government's regulation of animals pursuant to its police powers enjoys a long-standing history of surviving constitutional challenges. See id.; State v. Peters, 534 So.2d at 760, 765 (Fla. 3d DCA 1988). In particular, with regard to dogs, the United States Supreme Court observed over a century ago that damages attributable to dogs "are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance." The Court stated that dogs are
subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. That a state, in a bona fide exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be which has for its object the welfare and comfort of the citizen.
Id. at 765.
On this appeal, Welsh does not challenge the Village's authority to enact the subject Ordinances pursuant to its broad police power. Nor does he challenge the Village's legislative findings that the ownership of more than two dogs per household constitutes a detriment to the public welfare. What Welsh does take exception to is the Village's constitutional right to have this Ordinance enforced against him where he lawfully owned and housed more than two dogs prior to the Ordinance's enactment.
Preliminarily, Welsh argues that the Village is prohibited from enforcing the Ordinance against him by virtue of the Village Code, section 1-7, entitled "Code does not affect prior offenses, rights." This section states that:

*1268 [n]othing in this Code or the ordinances adopting this Code shall affect any offense or act committed or done, or any penalty or forfeiture incurred, or any contract or right established or accruing before the effective date of this Code." (emphasis added).
Welsh therefore reasons that because there was no limitation on the number of pets a Village resident could own prior to the enactment of the Ordinance, the plain language of section 1-7 prevents the Village from enforcing the Ordinance against dog owners in the Village who lawfully owned more than two dogs when the Ordinance was enacted. This argument, however, was never advanced to the trial court and, as such, has been waived for purposes of appeal. See Bill Seidle Aircraft Sales & Servs., Inc. v. Bellomy, 782 So.2d 449 (Fla. 3d DCA 2001) (citing Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) and Wildwood Props., Inc. v. Archer of Vero Beach, Inc., 621 So.2d 691, 692 (Fla. 4th DCA 1993)).
Even if this argument wasn't foreclosed on this appeal, it would afford Welsh no relief. That is because Section 1-7 states only that rights established prior to the enactment of the Village Code cannot be abrogated by the Code's adoption. If, as the Village suggests, we were to take judicial notice of the fact that the Village was incorporated in 1946 and its charter and Code were enacted in 1947, Welsh would be entitled to no relief since he most certainly did not own his dogs 57 years ago. He therefore had no established property rights to his dogs prior to the adoption of the Village code. We therefore turn our attention to Welsh's constitutional argument.
Welsh argues that ordinances or laws which take away existing rights are substantive rather than procedural in nature and cannot be applied retroactively. See Serna v. Milanese, Inc., 643 So.2d 36, 38 (Fla. 3d DCA 1994); Winston Towers 200 Ass'n, Inc. v. Saverio, 360 So.2d 470 (Fla. 3d DCA 1978). Although this is a correct statement of law, we conclude that it is inapplicable in the context of legislation enacted pursuant to a government's police power for the health and welfare of the general populace to abate a nuisance. Indeed, the cases relied upon by Welsh were not even decided in this context. See Serna v. Milanese, 643 So.2d at 37 (considering whether section 673.4021, Florida Statutes (1993), which absolved corporate officers from liability for signing corporate checks, could be retroactively applied), Serna v. Arde Apparel, Inc., 657 So.2d 966 (Fla. 3d DCA 1995) (same); Winston Towers, 360 So.2d at 470-71 (finding amendment to private condominium association's bylaws banning all pets, including any pet acquired as a replacement of a prior pet not registered as of a date one year prior to amendment, to be void as an attempt to impose a retroactive regulation). For this reason, Welsh's reliance upon these decisions is misplaced.
In Knowles v. Central Allapattae Properties, the Florida Supreme Court expressly reaffirmed the principle that although constitutional rights may not be transgressed by the sovereign, the possession and enjoyment of all rights are subject to the paramount police power of the state to do that which is necessary to secure the comfort, health, welfare, safety, and prosperity of the people:
It is a well settled rule that all property is held subject to the right of the State to regulate it under the police power in order to secure safety, public welfare, health, peace, public convenience and general prosperity. The rule is based upon the concept that all property is held on the implied condition or obligation that its use shall not be injurious *1269 to the equal rights of others to the use and benefits of their own property. The public interest is paramount to property rights. The right of the State to regulate a business which may become unlawful is a continuing one, and a business lawful today may, in the future, because of changed conditions, the growth of population, or other causes, become a menace to the safety and public welfare, and the continuance thereof must yield to the public good.
Knowles, 198 So. at 823 (citations omitted). Thus, the court upheld a permanent injunction enjoining the operation of a veterinary hospital adjacent to a residential subdivision, which had been declared a nuisance by virtue of the continuous barking of the dogs and odors from the kennels, even though this business had been fully established prior to the development of the residential community. The fact that this business had been constructed and operated prior to the construction of the plaintiffs' homes near the same was found not to be a defense to this action. Id. at 822-24.
Similarly, in this case, we conclude that Welsh's ownership of more than two dogs prior to the enactment of the Ordinance is not a defense to the Village's enforcement of the same against him to abate a nuisance in the Village. His rights to his dogs must yield to the Village's need to curb and correct the problems associated with multiple dog ownership within the Village. We therefore reverse the order under review and remand with directions that a permanent injunction be entered against Welsh enjoining him from continuing to own and house more than two dogs in his household in the Village.
Reversed and remanded with directions.