TUSHBANT v. GREENFIELD'S INCORPORATED.

1. HIGHWAYS AND STREETS—PUBLIC SIDEWALKS—WAITING LINES OF PATRONS OF RESTAURANT—PRIVATE NUISANCE.

Plaintiff, storekeeper in central downtown shopping area of a large city, the view to whose windows was blocked by waiting lines of patrons of defendant's restaurant next door, which formed on 14-foot public sidewalk during lunch and dinner hours, established the existence of a private nuisance which entitled plaintiff to some relief.

2. INJUNCTION—ACCESS TO HIGHWAY.

Injunction lies at the suit of a private person to restrain such an appropriation of the site of a street by another person as leaves no mode of access to the plaintiff's premises and otherwise prejudices him.

3. NUISANCE—ABATEMENT—EQUITY.

If a nuisance is private, infringes on the rights of others, and arises out of the manner of conducting a legitimate business, equity will point out the nuisance and decree the adoption of methods calculated to eliminate or minimize the injurious features.

4. SAME—ACCESS TO STORE FROM PUBLIC SIDEWALK—SUPERVISION OF WAITING LINES OF PATRONS OF RESTAURANT.

Restaurant keeper in central downtown shopping area of a large city who operates his business in such a manner as to cause its patrons to form a line-up in front of plaintiffs' adjacent store, obstructing access to and view of the front of the store by persons on the public sidewalk, is required to have its employee supervise the line-up of its customers.

5. COSTS—NUISANCE—MODIFICATION OF DECREE.

No costs of appeal are allowed either party in suit to abate alleged private nuisance caused by the manner in which defendant operates restaurant business next door to plaintiffs' store in central downtown shopping area of a large city where decree of trial court was only modified.

NORTH, C. J., and SHARPE and REID, JJ., dissenting.

Adequacy of other remedies as affecting right to an injunction, see 4 Restatement, Torts, § 938.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 6, 1944. (Docket No. 61, Calendar No. 42,608.) Decided May 17, 1944. Rehearing denied June 30, 1944.

Bill by Fred Tushbant and another, copartners doing business as Griswold Sporting Goods Company, against Greenfield's Incorporated, a Michigan corporation, to restrain operation of business in such a manner as to cause the formation of a line of waiting patrons. Decree for plaintiffs. Defendant appeals. Modified and affirmed.

*Sempliner, Dewey, Stanton & Honigman (Jason L. Honigman* and *Milton J. Miller,* of counsel), for plaintiffs.

*Darden & Brashear,* for defendant.

REID, J. (*dissenting*). The bill of complaint was filed to enjoin defendant from operating its restaurant business in such manner as to cause its patrons to form a line-up in front of plaintiffs' adjacent store, obstructing access to and view of the front of the store by persons on the sidewalk. The circuit court issued an injunction as prayed for and defendant appeals.

The case was submitted on stipulation of fact, the more important parts of which are as follows:

"2. Defendant is a Michigan corporation, with its principal offices in Detroit, Michigan. For a number of years past it has been engaged in a restaurant business at several locations within the city of Detroit, including the premises designated as 1130 Griswold street, which adjoins the premises occupied by plaintiffs. Defendant's said premises are likewise leased from the E. D. Stair Corporation

and are part of the same building in which plaintiffs' store is located. The store in which the defendant's restaurant business is carried on is directly adjacent to and south of plaintiffs' premises. The property in question is on the east side of Griswold street, which runs north and south, and is in the block bounded by State street on the north and Michigan avenue on the south. The premises in question are a part of the central downtown shopping area of Detroit. The public sidewalk in front of the premises in question is approximately 14 feet in width.

"3. Defendant's restaurant business conducted at said premises has been very successful. Its business is conducted primarily in cafeteria style at popular prices and thousands of patrons are served there daily, except Sundays. On frequent occasions, the interior of defendant's premises is unable to hold the large number of customers seeking to gain entrance, although it does accommodate a double line of people within said premises which is approximately 60 feet long from the entrance to the serving counter; and often to the extent hereinafter shown crowds of persons line up on the outside of defendant's premises on the public sidewalk and continue their line from defendant's premises running north along the front of plaintiffs' store and beyond.  *  *  *

"4. The lines thus formed on the public sidewalk are generally from one to two persons in depth and, on rare occasions, more, and to the extent hereinafter shown extend in length across the entire front of plaintiffs' store and for some distance beyond. The frequency with which such crowds are gathered and the period of time for which they so continue varies from day to day. In earlier years there were occasions when lines of customers were so gathered, but such occasions were less frequent and the lines

continued for shorter periods than in the six-month period prior to the filing of the instant bill of complaint. * * * When such lines form, it is usually during the lunch and dinner period, with the lunch period being from 11 a.m. to 2 p.m. and the dinner period from 5 p.m. to 7:30 p.m. These lines occur with varying degrees of frequency that may be said to occur not less than three times a week and often daily, and last for periods extending from ½ hour to 1½ hours at a time.

"5. When such lines of people gather on the public sidewalk in front of plaintiffs' store, the front of their store is substantially hidden from view, plaintiffs' display windows are almost completely obstructed, and it is from time to time difficult to break through the line to go into or come out of plaintiffs' doorway. People so lined up are often loath to permit plaintiffs' customers to break through the line for the purpose of entering plaintiffs' store under the belief that such persons are merely trying to get ahead of them for the purpose of entering into defendant's restaurant."

The trial judge's findings do not sustain the decree. The opinion says the police should cause patrons of the restaurant to form a line near the edge of the 14-foot sidewalk and not next to the building and that if they fail, the defendant could and should perform this service. The opinion further states:

"We will not go the absurd length of stating that he should drive away customers who cannot be served at once and who are obliged to wait their turn. We do not hold that he must at his peril cope with this problem with complete efficiency. But we do hold that he cannot sit at his cash register with sublime indifference, saying 'So sorry.' We do hold that he must do what he reasonably can—that he can

at least *try* to avoid damaging his neighbor. This does not involve the usurpation of a policeman's authority.''

Plaintiffs rely in their brief upon the case of *Mackenzie* v. *Frank M. Pauli Co.*, 207 Mich. 456 (6 A. L. R. 1305). However, the matter of the conducting of a lumber business, the use of machinery for interior trim factory, parking wagons along in front of plaintiff's residential property, piling refuse and materials in the streets and alley, do not reveal a situation comparable to the present case. It is so different that the case cited does not aid in determining the issues in the instant case. There are no cases cited by plaintiffs that bear on the disputed right of a store to enjoin or regulate waiting lines of patrons of a lawful business in property adjacent thereto.

Many cases are cited by plaintiffs dealing with injunctive relief against nuisances: for example, enjoining a permanent outside stairway built on the street, *McCormick* v. *Weaver,* 144 Mich. 6; gasoline filling station in a street, *Village of North Adams* v. *Wertz,* 218 Mich. 507; flagman's shanty in a street, *Long* v. *New York Central R. Co.,* 248 Mich. 437; boathouse projecting into foot of street, *People* v. *Severance,* 125 Mich. 556. Foregoing are cases in which physical obstructions were placed or threatened to be placed in streets by direct acts of the defendants themselves and the principle involved is well recognized.

The question involved herein is novel.

There are many occasions of waiting lines of patrons observed in many cities at ballparks, theaters, and several other places where lawful business is conducted. The situation in the instant case results in something of a damage to the neighbor's property for which the law affords no remedy as between the

parties concerned. Instead the remedy is in the power of the police and it is their plain duty to reasonably control street conditions.

The decree recites that defendant's conduct contributes to and causes violations of the ordinance of the city and causes continuing or recurrent nuisance. The defendant is not guilty by reason of the facts recited in the stipulation of a violation of the ordinances against loitering, congregating, et cetera, on the streets and the decree is at fault in reciting such guilt.

The police have exclusive charge of the matter of conduct of persons on the streets. It is erroneous to order a private party to assume any control of persons on the streets whatsoever.

The decree requires:

"That defendant cause such employees to handle the lining up of such customers in such a manner as will leave a free passageway for use of the public on the sidewalk adjacent to the premises of plaintiffs and defendant; that such line-up shall be directed to form along the outside edge of the sidewalk nearest the curb, with not more than two persons standing abreast of each other, and that the continuity of such line-up shall be broken so as to permit free passageway opposite plaintiffs' doorway, and that on alternate weeks, such line-up shall be directed to be formed to the south of defendant's premises."

This portion of the decree requires of defendant the exercise of functions that are not permitted in law and the assumption of authority over persons in the street, which authority neither the court itself nor the defendant may lawfully exercise.

The stipulation further recites that the parties during the Christmas season of 1942 shared the expense of having a watchman who lined up the crowds

so as to leave an adequate view of plaintiffs' display windows and an opening for ingress and egress to plaintiffs' doorway with nearly satisfactory results. This apparently fair arrangement could be voluntarily continued only by acquiescence of the police and is not such that the court could compel.

In this case the record shows that the defendant addressed a communication to the police commissioner requesting police control of the situation. A sincere insistence on such police action is all that could be expected of defendant.

The decree should be reversed and bill dismissed. Defendant should have costs of both courts.

NORTH, C. J., and SHARPE, J., concurred with REID, J.

BOYLES, J. Plaintiffs have established to some extent the existence of a private nuisance which can be sufficiently abated by defendant to minimize the resulting harm to plaintiffs' business. Plaintiffs are entitled to some relief. *Mackenzie* v. *Frank M. Pauli Co.,* 207 Mich. 456 (6 A. L. R. 1305).

I cannot agree with Mr. Justice REID that this is entirely a public nuisance, and that the only remedy for the abatement thereof rests with the public (police) authorities.

"Injunction lies at the suit of a private person to restrain such an appropriation of the site of a street by another person, as leaves no mode of access to complainant's premises, and otherwise prejudices them." *Pratt* v. *Lewis* (syllabus), 39 Mich. 7.

If a nuisance is private, infringes on the rights of others, and arises out of the manner of conducting a legitimate business, equity will point out the

nuisance and decree the adoption of methods calculated to eliminate or minimize the injurious features. *Adams* v. *Kalamazoo Ice & Fuel Co.,* 245 Mich. 261; *Smith* v. *City of Ann Arbor,* 303 Mich. 476.

The record before us is convincing that defendant's manner of conducting its restaurant business is harmful to plaintiffs and results in their loss of business. It is possible to minimize the damage without imposing undue hardship on defendant. The decree entered in the circuit court should be modified. It is not necessary to require defendant to form a line-up of its customers on the outside edge of the sidewalk with not more than two persons standing abreast of each other, with an opening in crossing the sidewalk. The obstruction of view of plaintiffs' show windows for a short period of time is unimportant as compared with the inconvenience to the public use of the street that would be caused by trying to compel users of the street to pass through a double line-up of persons from curb to door. Unobstructed entrance to plaintiffs' store can readily be accomplished by defendant by means of an employee of defendant supervising the line-up of its customers. Plaintiffs may propose a decree for entry in this court in accordance herewith. No costs of appeal allowed either party.

STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred with BOYLES, J.