R. W. SHAMHART, doing business under the firm name and style of PEARSON PHARMACY, v. MORRISON CAFETERIA COMPANY, of West Palm Beach, A Florida Corporation.

32 So. (2nd) 727                                                          June Term, 1947
October 28, 1947                                                             En Banc
Petition for Rehearing denied Dec. 15, 1947

*Newman T. Miller & Wareing T. Miller* and *Bezoni & Mc-Cord, Frank Bezoni* and *Guyte P. McCord, Jr.,* for appellant.

*Chillingworth & Simon* and *Loren D. Simon,* for appellee.

ADAMS, J.:

Morrison's Cafeteria in West Palm Beach fronts west on Olive Street with an alley on the north side. One hundred eight feet to the south is appellant's corner drug store with entrance on Olive Street and also on Datura Street. During the noon and evening meals, customers of the cafeteria form

lines on the sidewalk which frequently result in most of the entrances to appellant's drug store being virtually closed to its customers for long periods of time. Appellant sued the cafeteria to enjoin the nuisance and sought damages for loss of business. The cause was referred to a master who recommended a decree for appellant and found the damage to date amounted to $2896.57. Exceptions were filed to the report.

On consideration of the master's report, the chancellor found no basis for injunctive relief; dismissed the bill and therefore did not pass on the amount or the question of damages.

The rule had long been settled at common law that no man shall use his property as to injure another. The general rule is settled by good authority to the effect that abutting property owners may not use the sidewalk in an unreasonable manner and where such unreasonable use is made it is both a public and private nuisance. Where another suffers a special injury as a result thereof he may have appropriate relief. Jacksonville, Tampa & Key West Railway Company v. Thompson, 34 Fla. 346, 16 So. 282, 26 L.R.A. 410; 25 Am. Jur., pages 606, 607; 39 Am. Jur., page 280 et seq.; McQuillin Municipal Corporations, Revised Vol. 4, (2nd Ed.) Section 1489.

A late case somewhat analogous to this is that of Tushbant v. Greenfields, Inc., 308 Mich. 626, 14 N.W. 2nd 520, wherein it was held that:

"If a nuisance is private, infringes on the rights of others, and arises out of the manner of conducting a legitimate business, equity will point out the nuisance and decree the adoption of methods calculated to eliminate and minimize the injurious features."

The same rule is generally approved by the English authorities.

This case presents a clear case where appellee has utilized the sidewalk as a waiting room for its customers rather than provide a place upon its own premises.

The nature of the use employed, surrounding appellant's entrances, is such as to cause appellant an injury different in kind and degree from the public in general. It is not incumbent on the appellant to solve appellee's problem of how or

where to place the customers. Neither will the court devise a plan or suggest a method. The appellee created his problem by utilizing the entire space of his premises for cooking food and seating customers therefore he cannot constantly make use of the public sidewalk as a waiting room to the special injury of appellant.

As to the amount of damages, we will not pass upon that because the chancellor naturally did not get to that question. Upon the mandate going down, the chancellor will ascertain what damages the appellant has sustained.

The decree is reversed.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.

BUFORD and BARNS, JJ., and PARKS, Associate Justice, dissent.

BARNS, J., dissenting:

I regret that I am compelled to dissent to the Court's opinion prepared by Mr. Justice ADAMS.

I am unable to conclude that Morrison Cafeteria is doing anything wrong toward plaintiff.

It is a maxim of law that one should so use his property as to not injure another but every inconvenience, discomfort, and annoyance is not a nuisance.

The annoyance to the plaintiff is not from the restaurateur but from the public who are the patrons apparently because of the excellent qualities of the food served.

I fail to see that Morrison Cafeteria has done more than use its property as others in like businesses should be encouraged to do—to-wit: serve food so good, wholesome and delectable as to cause the public to be willing, if necessary, to stand in line and wait for the opportunity to enter and satisfy their hunger. Some competition seems to be the only justified interference.

It is the people of the street who are using the sidewalk in the manner complained of and not Morrison Cafeteria. The Cafeteria's act is the remote cause but not the proximate. The regulation of traffic on the sidewalk is one for the municipality and not for the Cafeteria nor a court of equity.

The plaintiff may be suffering some damages because of the great patronage of Morrison Cafeteria but this damage is not the proximate result of any wrongful act of the Cafeteria. The Cafeteria's acts are the remote and not the proximate cause—Morrison Cafeteria's act being only to make its food wanted.

As stated in the opinion of Paty v. Town of Palm Beach, 158 Fla. 575, 29 So. (2nd) 364:

"It appears that the appellee is sued for doing of an authorized act and the exercise of a lawful right and that the damages were without wrong."

BUFORD, J., concurs.

PARKS, Associate Justice, dissenting:

Injunction proceedings are brought to declare and abate an alleged private nuisance and for damages. The defense denies the existence of the nuisance and further, that even though the nuisance be found to exist, it was not of defendant's creation. There is little substantial dispute in the evidence. The problem, not infrequent in this character of case, is the determination of the law applicable to the facts.

For the period involved, April 2, 1945 to April 25, 1946, Shamhart operated a drug store, including a soda luncheonette, with entrances at or near the northeast corner of Olive Avenue and Datura Street in the City of West Palm Beach. About 108 feet north, on Olive Avenue, on the same side of the street, Morrison operated its cafeteria. Both parties were lessees of the real estate occupied. Their places of business were not adjacent-between them were two places of business of other ownership. During this period, from time to time, while serving the noon (11:30 A. M. to 1:30 P. M.) and night (4:30 P. M. to 6:30 P. M.) meals the lobby and approach to Morrison's serving line was inadequate to house all persons waiting to be served at its counter. These waiting persons of their own volition formed queues on the sidewalk beginning at the entrance of the cafeteria and extending along Olive Avenue in front of and past the entrances to the drug store and were of such numbers and so placed themselves as materially to obstruct, and at times block, its

entrances. Business was adversely affeected to a very sub-
stantial degree or practically halted. The extent of the
queues and the obstructing or blocking of the entrances was
much more accentuated during the winter or tourist season
than at other seasons of the year. Neither Shamhart nor
Morrison made any affirmative attempt to control or prevent
the queues from obstructing the entrances. Both attempted
unsuccessfully to secure the intervention of the city police in
an effort to abate or ameliorate the condition. They were ad-
vised that the city did not have sufficient officers available for
such duty.

Morrison in its operation and arrangement of its premises
employed the space available so that the most people in the
shortest space of time were served. It operated in such man-
ner as to facilitate the serving of the largest number of
people reasonably possible during the serving hours. It made
no effort by unusual advertising or by signs at its place of
business to attract large numbers of people. The opening of
its doors for the operation of its business at an earlier hour
before each meal would not have materially decreased the
size or the length of the queues. It is unreasonable under
prudent business practices to require Morrison to reconstruct
or enlarge its building so that it might adequately house all
persons who came for service of meals. It has done nothing
to cause the gathering of the crowd and the formation of the
queues other than conduct its business in a reasonable, usual
and ordinary manner. During the entire period the entrances
were obstructed or blocked for a total of 194 hours. There is
evidence that Shamhart sustained substantial damages in the
loss of profits as a direct result of the obstruction of the en-
trances and there is reasonable apprehension that during the
tourist season of 1946-47 a similar condition would recur and
similar damages suffered unless relief is effected. These
facts found by the Master were not disturbed by the Chancel-
lor in any material particular.

The Chancellor in his decree rejected the recommendation
of the Master that the queues be regulated and controlled, by
an employee of the defendant to be stationed on the sidewalk
and the further recommendation that these persons be placed

on other premises of the defendant on the ground that such was unreasonable and impractical. The record substantiates this holding. In his decree denying all relief and dismissing the bill holding that Morrison was not responsible for the action of the queues in obstructing and blocking Shamhart's doors and consequent damages suffered, he said:

"The right to injunction necessarily depends upon the violation of a duty or obligation imposed by law upon the person to be restrained. As previously stated, defendant is engaged in a legitimate business. The Court can discover no act on its part the continuation of which may be enjoined. Neither can the court discover any duty on defendant's part to police the public streets and regulate their use by pedestrians at places far removed from its own premises. That responsibility rests upon public authority."

Shamhart appealed.

That Morrison's operation was a nuisance which should be declared and abated and damages awarded, Shamhart relies upon Tushbant v. Greenfield, Inc., 14 N. W. (2nd) 520; Lyons & Sons Company v. Gulliver, Ann. Cases 1916 (b) page 959; Barber v. Penley, 2 Ch. (English) 447, 62 L.S. Ch. 623, 68 L.T.N.S. 662, also, see footnote 975 American Ann. Cases 1916 (b) ; Strand Theatre Company v. Cahill, 61 Canadian Supreme Court 100.

In the Tushbant case there is much said that supports this contention. The facts, while similar, are not in all respects of same import as those in this case. In that case the picture of existing material conditions is not so complete as here with reference to the use of the premises, the conduct of defendant's business and the circumstances confronting it. The holding of a majority of the Court was that the obstruction to the access to plaintiff's premises by the lines of people was a nuisance chargeable to defendant and could and should have been minimized by defendant stationing an employee on the sidewalk to supervise and control them, and the Court by mandatory injunction would require this to be done by defendant. It was further held that plaintiff did not have to rely on the police for the abatement of the nuisance.

In the Lyons case the defendant operator of a theatre kept

its doors closed, until a few minutes before the performance began, to those who did not choose to pay an extra charge to enter upon arrival, although there was ample space within the theatre for accommodating a large number of the crowd who were accustomed to gather and wait in the street for the opening of the doors. Street musicians and acrobats were attracted and swelled the crowd which blocked access to plaintiff's premises during such waiting period. The defendant hired police to prevent the crowd from interfering or obstructing entrance to plaintiff's premises, but the manner employed by them seems to have aggravated the condition rather than relieved it.

In the Barber case the defendants, operators of a theatre, opened their doors and began their performance at 7:30 P. M. They kept their doors closed while the crowd was accustomed to gather about 5:30 P. M. and wait on the street about 2 hours for their opening. During the waiting period, they obstructed and interfered with access to plaintiff's premises. Defendants employed police to control the crowd and keep open a way of access. They had varying success and eventually, during the pendency of the cause, succeeded. Since the condition was thus corrected, injunction was denied, but the Court in its opinion held that defendants were responsible to plaintiff for the crowd's action in interfering with access to plaintiff's premises.

In the Strand Theatre case it seems, after the accustomed crowd had gathered on the street, the defendant unreasonably insisted on the entire audience attending the first performance vacate its theatre before the second audience, or anyone, was admitted. By this method of operating the business the crowd was unnecessarily and unreasonably kept waiting on the street for a considerable time and, during such period, obstructed or interfered with access to plaintiff's property. The Court held the defendant responsible to plaintiff for the action and conduct of the crowd.

While much is said in the opinion in these cases supporting the contention made, each possesses elements of material difference. In each of these cases, (except the Tushbant case) by the chosen method of operating its business, the defendant

was guilty of an act of omission or commission, resulting in obstruction of access to plaintiff's premises by the crowd which could have been avoided if other reasonable and practical methods of conducting the business had been employed. In each of the cases the contention that it was a matter solely for the police control was disallowed. In none is municipal liability suggested.

Reliance is also placed on Strong v. Sullivan, 181 Pacific 59, 4 A.L.R. 343; Mechanics Mutual Telephone Co. v. Hirschman, 87 N.E. 238; Frick v. Kansas City, 93 S.W. 351; Harmon v. Louisville, etc. Railroad Company, 11 S.W. 703; Smith v. Mitchell, 75 Am. S.R. 858. It is hardly necessary to say that these cases involving physical invasion of the streets bear little analogy to this case other than enunciate the general principles of the law of nuisances and are of no great value as precedents.

Whether the conduct of the queues of people be determined a public nuisance of a character affording a cause of action to Shamhart or to him a private nuisance based on the *maxim, sic utere tuo ut alienum non laedas,* the sole act for which Morrison may be held responsible for their conduct is the failure to provide sufficient space on its premises to house them while waiting to be served. The facts absolve it of all incompetency or inefficiency in the operation of its business or failure to employ its premises to the best advantage to serve its customers, nor could it be reasonably required to enlarge or reconstruct its premises. The waiting persons of their own volition formed the queues on the sidewalk and interfered with access to Shamhart's place of business. At the time of interference no tradesman-customer relationship existed between these persons and Morrison and it had no authority to control their conduct or authorize its employee to go on the sidewalk and do so. Neither could the Court have clothed Morrison or its employee with such police authority. Such person, if so placed, could have done no more than appeal to the persons in the line to keep open the entrances. Had such an appeal been ignored, compliance could not have been enforced. To ground liability on the questionable success of such an appeal is obviously harsh, unreasonable, and extends

liability beyond the principles of *sic utere tuc ut alienum non laedas*. Furthermore, Morrison's failure, in view of the independent intervening conduct of the queues, was not the proximate cause of the injury and damage to Shamhart's business. Before there is liability "The acts done by the defendant must be the proximate and efficient cause of the creation of the nuisance complained of . . . Ordinarily, a person is not civilly liable for a nuisance caused or promoted by others over whom he has no control; nor is one bound to go to the expense or litigation to abate such nuisance."

39 Am. Jur. 299, Section 17.

In my opinion Shamhart's remedy, if any, is against the city of West Palm Beach. Generally, under our law the power of supervision and control of the streets and their traffic, as well as the power to abate nuisances, is vested in municipalities. This supervision and control is proprietary rather than governmental in its nature. Having such power, the duty to supervise and regulate the conduct of the pedestrian traffic unreasonably obstructing access to Shamhart's place of business as reflected in this record devolved upon the city. Tallahassee v. Fortune, 3 Fla. 19; Kaufman v. City of Tallahassee; 94 So. 697, 84 Fla. 634; Maxwell v. City of Miami, 100 So. 147, 87 Fla. 107; City of Tallahassee v. Kaufman, 100 So. 150, 87 Fla. 117; Douglass v. Sapotnick, 126 Fla. 756, 171 So. 765; F.S. 1941, Sections 167.01 and 167.05.

The decree of the lower Court should be affirmed.

BUFORD, and BARNS, JJ., concur.