75 So.2d 785 (1954)
Edmond JONES et al., Appellants,
v.
J.B. TRAWICK et al., Appellees.
Supreme Court of Florida. En Banc.
November 16, 1954.
*786 Coe & Coe, Pensacola, for appellants.
Forsyth Caro, Pensacola, for appellees.
ROBERTS, Chief Justice.
The question presented on this appeal is whether a cemetery proposed to be located in a predominantly residential area may be enjoined as a private nuisance by the adjacent home owners. The facts giving rise to this question are stated in the dissenting opinion by Mr. Justice Thomas.
We are cognizant of the rule that cemeteries are not nuisances per se and that the present weight of authority in this country is, as stated in 10 Am.Jur., Cemeteries, Sec. 16, p. 498, that "A cemetery does not constitute a nuisance merely because it is a constant reminder of death and has a depressing influence on the minds of persons who observe it, or because it tends to depreciate the value of property in the neighborhood, or is offensive to the aesthetic sense of an adjoining proprietor." We are, however, unable to reconcile the quoted rule with that applicable to funeral homes and undertaking establishments, where both are proposed to be located in a residential area. With respect to the latter establishments, there can be no doubt that, as stated by the annotator in 87 A.L.R. at page 1061: "The greater weight of recent authority is to the effect that the establishment and operation of an undertaking business in a purely residential section, under circumstances which would cause a depressed feeling to the families in the immediate neighborhood, and a constant reminder of death, appreciably impairing their happiness, or weakening their power to resist disease, and depreciating the value of their property, constitutes a nuisance." See also 66 C.J.S., Nuisances, § 72, p. 819; 54 Am.Jur., Undertakers and Embalmers, Sec. 7, p. 512; Jack v. Torrant, 136 Conn. 414, 71 A.2d 705; Mutual Service Funeral Homes v. Fehler, 254 Ala. 363, 48 So.2d 26; Frederick v. Brown Funeral Homes, 222 La. 57, 62 So.2d 100; Saier v. Joy, 198 Mich. 295, 164 N.W. 507, 508, L.R.A. 1918A, 825; Williams v. Montgomery, 184 Miss. 547, 186 So. 302, 303; Brown v. Arbuckle, 88 Cal. App.2d 258, 198 P.2d 550. The rule is stated in Cooley on Torts (4th Ed.) Vol. 3, p. 18, sec. 435, as follows:
"The inherent nature of an undertaking establishment is such that, if located in a residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the *787 absence of a strong showing of public necessity, its location in such a district should not be permitted over the protest of those who would be materially injured thereby."
As pointed out in Jordan v. Nesmith, 132 Okla. 226, 269 P. 1096, 1099, "The basis of injunctive relief by the courts in these cases [involving undertaking establishments] seems, in the last analysis, to have been the fact that constant reminders of death, such as an undertaking establishment and the activities connected with it, impair in a substantial way the comfort, repose, and enjoyment of the homes in that immediate neighborhood."
This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another, as expressed in the maxim sic utere tuo ut alienum non laedas, Reaver v. Martin Theatres of Florida, Inc., Fla., 52 So.2d 682, 683, 25 A.L.R.2d 1451, and that "Anything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable, is a `nuisance' and may be restrained." Knowles v. Central Allapattah Properties, Inc., 145 Fla. 123, 198 So. 819.
While this court has not passed directly on the question of whether the proposed construction of a funeral home in a residential area would be enjoined as a private nuisance at the instance of a neighboring home owner under the general rule stated above, we have no doubt that such would be the holding of this court. Compare State ex rel. Skillman v. City of Miami, 101 Fla. 585, 134 So. 541, 544, in which it was stated that "it must be accepted as a matter of common knowledge" that contact with a funeral home may result in great discomfort, depression and unhappy thoughts. And see Philbrick v. City of Miami Beach, 147 Fla. 538, 3 So.2d 144. Nor has this court considered the question of whether a cemetery is a nuisance. This being a case of first impression in this court, we have decided to apply to cemeteries the rule applicable, by the great weight of authority, to funeral homes and embalming establishments, quoted above. In our opinion, their impact on a residential community is so similar as to make the application of a different rule entirely unrealistic. The Supreme Court of South Carolina, in Young v. Brown, 1948, 212 S.C. 156, 46 S.E.2d 673, 679 has reached the same conclusion. In holding that a cemetery located in a residential area is a "private nuisance", although not detrimental to health or offensive in any physical sense, the court said:
"It may be readily conceded that the mere fact that a body is buried near a residence is not reasonably calculated to cause a depressed feeling or affect the cheer and happiness of the home and we may assume, without deciding, that the constant view of markers or tombstones over the graves would probably not produce a depressing effect upon the mind of the average person, but these are not the only incidents connected with a cemetery. There is the passage of the funeral procession with its mourners and the last rites at the grave followed by frequent visits of the bereaved persons, all of which are conducive to depression and sorrow and when constantly recurring in close proximity to a residence may deprive the home of the comfort and repose to which the owner is entitled. Proper respect for the dead and those in grief and sorrow naturally imposes a restraint at such times on the usual laughter and play of children and social and family gatherings could not be held under cheerful surroundings. The foregoing circumstances may not affect the comfort and repose of the home to the same degree as a funeral home adjacent to or across the street from a residence but there do exist in connection with a cemetery many of the considerations which have prompted the courts to declare a funeral home a private nuisance."
*788 The evidence introduced in the court below was ample to sustain the plaintiffs' allegations that the existence of a cemetery would substantially interfere with the comfort, repose and enjoyment of their homes. The evidence showed, in addition to the depressing effect on the residents of the funerals already held there (there had been six at the time of the trial), that the residents' water supply came from wells, the water in which might reasonably be supposed to have percolated through the cemetery; and while there was evidence that no contamination to the water would actually result, the defendant's own witness testified that he "certainly would not want to consume it off the corpses of the dead". There is no doubt that the area is predominantly residential. A disinterested witness testified that he advised the owner of the land upon which the cemetery was proposed to be constructed that the adjoining residents objected, at a time when the only work that had been done was the laying of the foundation of the gate. There was also evidence that, even adding to the original cost of the land the cost of the improvements made prior to the institution of suit (after which the defendant stopped further construction and sale of cemetery lots), the land could be sold as residential lots for an amount sufficient to cover the defendant's investment therein. Although, as noted, only six funerals had taken place at the time of suit, the defendant planned to divide the property into 6,000 cemetery lots. It was not, then, a small churchyard in connection with an existing church, but a large commercial enterprise, for profit. And while it has no legal relevancy here, the fact might be noted that the plaintiffs had bought their lots with the expectation that the property would be used as a park or recreation field, although it was not so dedicated on the plat. They would thus not only be deprived of an expected advantage, they would be saddled with an undoubted disadvantage. The plaintiffs' allegation that the cemetery would impair the value of their lands does not appear to have been proved; but we think it can be judicially noticed that a lot in a subdivision near a cemetery would at least not be as readily resalable as one not adjoining a cemetery.
In our opinion, under all the facts here present, it is not "fair and reasonable" to allow the defendant to use his land for a cemetery, in the face of the plaintiffs' protests. Their homes, no matter how humble, are to them their castles. They bought their lots and built their houses with the expectation that they could spend their leisure hours with their families free from business cares and anxieties. They did not buy them with the expectation of living forever in the gloomy shadow of death, and with the disquieting interruptions of their normal pastimes and peaceful pursuits occasioned by constantly recurring funeral services. We know of no one who would not object to the thought of drinking water that had been drawn from a surface so near the dead, no matter how pure the health authorities had stated it to be. Nor can it be denied that an atmosphere of gloom and depression is not psychologically conducive to the happiness and contentment of a family. The constant reminders of death, the depression of mind, would, in our opinion, deprive the home of that comfort and repose to which its owner is entitled by law; and it is our firm conviction that, under the circumstances here, it is unreasonable to require the plaintiffs to suffer that deprivation.
For the reasons stated, the decree of the lower court is reversed.
Reversed.
TERRELL, SEBRING, HOBSON and MATHEWS, JJ., concur.
THOMAS and DREW, JJ., dissent.
THOMAS, Justice (dissenting).
The bill of complaint was filed by a large number of homeowners to restrain the use as a cemetery of certain property adjacent to their homes.
*789 Associated Properties, Inc., bought a tract of land and subdivided it, sold the lots, and executed deeds of conveyance carrying covenants running with the land restricting the use of most of the lots to residences for Negroes. The original tract was developed in units. In Unit No. 2 was a block, six hundred feet in length and five hundred and forty feet in width, which was not divided into lots, bore no designation, and was excluded from the restrictions. According to the bill of complaint Associated Properties, Inc., "made it widely known to purchasers * * * that the same would be used as a sort of park or recreation field, although nothing of record or in writing was given to bind the owners thereto." (Italics supplied.) Eventually the block was sold to the appellees, J.B. Trawick and F.A. Baird, who established it as a cemetery and have already sold lots which have been used for interment of corpses. The appellants claimed in their pleading that their water supply would become contaminated because it flowed through the cemetery, and that their happiness would be destroyed and their property depreciated by the frequent recurrence of funeral processions and ceremonies.
It is now conceded that there was insufficient proof that actual injury to the physical health of the appellants was threatened by burial of corpses in the cemetery, but it is insisted, in effect, that because of the peculiar aversion of Negroes to graveyards and the extreme lament of colored mourners, the normal lives of the appellants would be so affected as to render the use as a cemetery of the property so near them a nuisance.
Before approaching a solution of the problem, it is well to say that it is simplified by the elimination of any over-reaching on the part of the sellers when the appellants purchased their lots or any dedication of the unplatted block to public use. There may have been some conversation about the hope of the subdivider that the city could be induced to buy the land and appropriate it to public use, but there was nothing to show that the subdividers were bound, much less their grantees, the appellees.
Even the testimony about the disturbance created by funerals was much in conflict, although one of the appellants said: "It worries you, every time you sit down to eat to hear screaming down there, and you wonder if somebody is getting killed." To this statement, which appears somewhat exaggerated, he added, quaintly, "I don't care to go to my own funeral if there is too much hollering and screaming."
An accessible cemetery is a necessity and I think that in determining the propriety of the location of the property in question to fill this need, the Court should not be influenced by the fact that the cemetery in question is a commercial enterprise. Whether it is a nuisance is a question of fact, for by the great weight of authority cemeteries are not per se nuisances. Village of Villa Park v. Wanderer's Rest Cemetery Co., 316 Ill. 226, 147 N.E. 104; Bellview Cemetery Co. v. McEvers, 168 Ala. 535, 53 So. 272; Young v. St. Martin's Church, 361 Pa. 505, 64 A.2d 814, 815.
After studying the briefs, I have gone to the record to see if there is a lack of evidence to support the chancellor's finding, that there is nothing peculiar to this cemetery to set it apart as one which is in itself a nuisance.
True, the burial of the dead is never a cheerful sight, but as sure as death is inexorable, a place for the dead must be provided, and it would be impracticable, if not impossible, always to locate one so that it could not be seen from some residence. Any atmosphere of gloom and depression that may accompany the processions and the rites are certainly common to all burial grounds.
I think this Court should decline to decide the case on the basis that members of the colored race are more affected by the funereal atmosphere than members of the white race, a point that is argued on behalf of appellants. I cannot agree that what might be a nuisance for one race would not be a nuisance for another.
*790 In my opinion the chancellor was eminently correct in dismissing the bill, on the merits, so I dissent from the judgment reversing him.
DREW, J., concurs.