MILLEDGE, STANLEY,
Associate Judge (dissenting).
Since neither the trial judge in entering summary judgment for the defendant in a negligence case nor the appellate court in affirming it has stated a reason, I cannot be sure what their reason is.
The plaintiff, a packaged meat saleman, parked his truck near the defendant’s drug store and went into a restaurant next door on business. When he entered, the defendant’s porter was cleaning some wooden board mats used behind the soda fountain to keep the employees’ feet dry and to afford safer footing than the floor. The mats were on the grass area between the sidewalk and the building. After talking to his customer, the plaintiff returned to his truck. The mats were not on the sidewalk. A few moments later it started to rain and the plaintiff again left the restaurant to close the truck windows. Concerned with the extent of protection afforded by an overhang, he did not look at the sidewalk as he started for the truck. After one step, his other foot slipped on a mat then lying *764 flat on the sidewalk. He fell and was hurt. I should not think a jury unreasonable if they found that the use of a public sidewalk as a place for cleaning and drying board mats is an unreasonable use. It is difficult to see how they could find otherwise. An unreasonable use of a sidewalk may not only be an act of negligence; it also constitutes both a private and a public nuisance. See Shamhart v. Morrison Cafeteria Co., 1947, 159 Fla. 629, 32 So.2d 727, 2 A.L.R.2d 429.
That contributory negligence was an issue for the jury is not quite so obvious as the question of negligence is. It is possible to agree with the defendant that anyone who encounters danger from a visible source is guilty of failing to use due care for his own safety. With this formula nothing can be a jury question. If the plaintiff sees the danger, then he is careless; if he doesn’t see, he is careless in not seeing it. This formula seems to assume a primitive condition of life. No doubt the cave man had to assume that every moment held great hazard and even his best friend might eat him. I think it is fortunate that what seems to be the consensus of the judges assumes at least a semi-civilized society in which people have enough regard for the safety of others that a considerable degree of reliance can be placed in their anticipated conduct. As business transactions are impossible if no one can be trusted, so physical movement is impossible unless conduct can be trusted. The notion that a man who trusts his neighbor is a fool and has only himself to blame for the consequences implies an almost hopeless view of society. Is this cynicism justified? Do not most people keep their cars on the right side of the road and yield as they approach a main road? Don’t most people refrain from using public sidewalks for any purpose except for walking? Is there not actually a standard of behavior so generally observed that it is referred to as the defendant’s manager did of his porter’s act of washing mats on the sidewalk as against common decency ?
The plaintiff stepped on the board and slipped. While only an inch or two high, the mat was quite large and easily visible. He didn’t see it, however, because he had his head concerned with the rain. It seems reasonable for one to have his head up under the circumstances but was he justified in assuming that no one in the previous five minutes has placed obstacles on the sidewalk ? Could reasonable men differ on whether his assumption was justified? The jurors would be told (although as a matter of common sense they would already know) that one is not negligent in failing to look for danger when there is no reason to expect it. Matthews v. Lawnlite Company, Fla.1956, 88 So.2d 299. Doubtless a cynical' jury might conclude that the plaintiff was-too naive for a jungle society and had only himself to blame. It is quite conceivable that the jurors might conclude that the assumption was justifiable. In any event the jurors could evaluate the matter more accurately than either the trial or the appellate judges who have nothing to go by other than reading such depositions as counsel chose to take on discovery.
There is one further aspect of the case which the cynical juror might consider. According to the plaintiff, he suffered harm not by tripping over the obstacle but by slipping on it. He said that after he fell he inspected and felt the board mat and found it covered with a slippery film. He saw “a bucket of soap that looked like it had been used, with a mop in it.” Since the purpose of the mats was to afford a drier and a safer footing than the floor of the store, the jurors might reasonably consider whether the plaintiff was careless in stepping on the mat, had he seen it and done so deliberately. They might consider whether it would occur to anyone .to say that a store employee was careless in stepping on a soapy mat behind the fountain?
Contributory negligence and negligence are peculiarly jury questions. Gauging conduct by the rule of reasonableness necessarily involves a considerable latitude in judgment. It requires the maximum of *765 opportunity to make it fairly. This involves seeing and hearing all of the witnesses. It requires a consensus rather than a single man’s judgment. Even the slightest doubt requires submission to the jury. Williams v. City of Lake City, Fla. 1953, 62 So.2d 732.
Last, but most important, state and federal constitutions say nothing about judges entering summary judgments on affidavits and depositions, but they do have something significant to say about jury trials. This the Supreme Court characterizes as “sacred”. Williams v. City of Lake City, supra. I do not think that the denial of a jury trial here is consistent with the idea that a right to jury trial is “sacred”, or even that it exists at all.