376 So.2d 914 (1979)
Herman R. BAUM and Sylvia M. Baum, His Wife, Appellants,
v.
CORONADO CONDOMINIUM ASSOCIATION, INC., a Florida Corporation, Appellee.
No. 79-12.
District Court of Appeal of Florida, Third District.
November 13, 1979.
*915 Joseph J. Glazer and Sidney Advocate, Hallandale, for appellants.
Nelson & Feldman and Michael K. Feldman, Miami, for appellee.
Before PEARSON and SCHWARTZ, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
CHARLES CARROLL
The appellants, owners of an apartment in a condominium building, filed this action against the condominium association, seeking an injunction to abate a nuisance alleged to be maintained by the defendant. Plaintiffs applied for and obtained a temporary restraining order. Following a nonjury trial the court entered a judgment dissolving the restraining order and dismissing the cause with prejudice. We find error, and reverse.
By their complaint the plaintiffs sought to abate a nuisance maintained by defendant condominium association consisting of noises from an uninsulated and uncovered portion of the lobby (above their apartment) alleged to disturb plaintiffs so as to deprive them of the free use and enjoyment of their apartment.
The evidence presented by plaintiffs, which was not in conflict or contradicted, clearly supported the allegations. Under the applicable law the plaintiffs were entitled to injunctive relief to abate such nuisance. Mercer v. Keynton, 121 Fla. 87, 163 So. 411, 413-414 (1935); Mayflower Holding Co. v. Warrick, 143 Fla. 125, 196 So. 428 (1940); Knowles v. Central Allapattae Properties, 145 Fla. 123, 198 So. 819, 822 (1940); Palm Corporation v. Walters, 148 So. 527, 4 So.2d 696, 699 (1941); Jones v. Trawick, 75 So.2d 785, 787 (Fla. 1954); and Town of Surfside v. County Line Land Company, 340 So.2d 1287, 1289 (Fla. 3d DCA 1977).
In Mayflower Holding Co. v. Warrick, 143 Fla. 125, 196 So. 428, 429 (1940), the Supreme Court said:
"In the case of Mercer v. Keynton, 121 Fla. 87, 163 So. 411, 413, this court said:
`An owner or occupant of property must use it in a way that will not be a nuisance to other owners and occupants in the same community. Anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or occupation physically uncomfortable may become a nuisance and may be restrained.'"
In Jones v. Trawick, 75 So.2d 785, 787 (Fla. 1954), the Court said:
"This court recognizes that the law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another, as expressed in the maxim sic utere tuo ut alienum non laedas, Reaver v. Martin Theatres of Florida, Inc., Fla., 52 So.2d 682, 683, 25 A.L.R.2d 1451, and that `Anything which annoys or disturbs one in the free use, possession, or enjoyment *916 of his property, or which renders its ordinary use or occupation physically uncomfortable, is a "nuisance" and may be restrained.' Knowles v. Central Allapattah Properties, Inc., 145 Fla. 123, 198 So. 819."
In Bartlett v. Moats, 120 Fla. 61, 162 So. 477, 479 (1935), the Supreme Court quoted from an opinion of Vice-Chancellor Pitney in Gilbough v. West Side Amusement Co., 64 N.J. Eq. 27, 53 A. 289, as follows:
"`That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventive remedy of the court of equity is thoroughly established. The reason why a certain amount of noise is or may be a nuisance is that it is not only disagreeable but it also wears upon the nervous system and produces that feeling which we call "tired." That the subjection of a human being to a continued hearing of loud noises tends to shorten life, I think, is beyond all doubt. Another reason is that mankind needs both rest and sleep, and noise tends to prevent both.'"
Upon filing action against the condominium association, the plaintiffs applied for and obtained a temporary restraining order, which was entered after a hearing on notice at which the parties presented evidence. Therein the court made the following findings of fact and conclusions of law:
"1. The Court finds that the removal of the carpeting by the Coronado Condominium Association has resulted in a disruption of the plaintiffs' right to quiet and peaceful enjoyment of their condominium apartment, and further
"2. The Court finds that to permit the present condition to exist would constitute a constructive eviction of the plaintiffs from their condominium unit, in violation of due process of law, and further,
"3. The Court finds that to permit the present condition to continue to exist would result in irreparable harm and injury to the health and well-being of the plaintiffs, who are elderly people and are entitled to the protection of the Condominium Association, and further
"4. The Court finds that the Board of Directors of the Coronado Condominium Association voluntarily agreed to lay the carpet to prevent the existence of noise and other commotion, that said carpet was in existence for a period of fourteen months prior to this hearing, and that said Board of Directors is estopped from removing said carpeting under the present conditions that exist."
The material facts, which were not in dispute, included the following. The condominium consists of a 25-story building, in which there are 250 apartments or units. The building's lobby is on the third floor. The plaintiffs' apartment is on the second floor, located directly below the lobby. The lobby is carpeted, except for a corridor leading from the entrance to the bank of elevators. The corridor is 12 feet wide and approximately 30 feet long to a right angle turn, and then 9 feet wide and 23 feet further to the elevators. The flooring of that corridor portion of the lobby is terrazzo, one inch in thickness, laid directly on the uninsulated concrete lobby flooring. The corridor in question is used by occupants of the apartments on the upper floors in going to and from their apartments, and in going to and from the outside pool area. The other corridors in the building were carpeted.
Prior to purchasing their apartment, located beneath the lobby, plaintiffs were advised by the developer's engineer that the lobby floor would be soundproofed. When they first inspected their apartment, they noticed no noise from above, because the corridor in question had been covered (by the developer) with a rubber matting runner. Likewise when plaintiffs moved into their apartment in September of 1976 they were not bothered by noise from the corridor above, on which the rubber matting then remained. Shortly thereafter the rubber matting was removed. Because of the noise resulting from the uncovered terrazzo corridor, they complained to the developer, who then owned the condominium association *917 corporation. A representative of the developer verified the existence of the noise, in person and with the aid of a scientific device. Having done so the developer then covered the terrazzo corridor with carpeting to eliminate the noise. After two days, by agreement between the ad hoc president of the unit owners' association and the developer, the carpet was taken up during the daytime and replaced each night.
In May of 1977 the ownership of the condominium association passed from the developer to the unit owners. Thereupon the condominium association was in control and management of the condominium building.
Following complaints by the association to the developer based on failure of the lobby floor to have been insulated,[1] the developer by letter to the condominium association offered to take certain steps to correct the noise condition affecting Mr. and Mrs. Baum in their use and enjoyment of their abode.[2] In reply thereto the condominium association sent a letter in which it rejected the developer's offer to correct the situation.[3]
From then until February of 1978 the condition continued with the corridor being covered by a carpet during the nighttime portion of each day. In February of 1978, at direction of the board of directors, the association removed the carpeting from the corridor and plaintiffs then filed this action.
The evidence presented by plaintiffs was amply sufficient to show that noise from the unprotected terrazzo corridor annoyed and disturbed plaintiffs in the free use and enjoyment of their apartment to the extent that it rendered its ordinary use physically uncomfortable. It would serve no useful purpose to detail further the testimony regarding that matter.[4] No evidence in contradiction thereof was presented by the defendant.
The judgment denying relief to the plaintiffs, which was entered on final hearing held before another judge, did not contain any findings of fact or conclusions of law. However, statements of the court in the course of the arguments of counsel on the final hearing showed several reasons relied on by the court as the basis for dismissing *918 the action. We hold such reasons, which are discussed below, were legally insufficient to deny relief to the plaintiffs, and that in entering judgment for defendant the court misapprehended the legal effect of the evidence as a whole.
The court expressed a doubt as to whether the discomfort occasioned to plaintiffs, which from the evidence was as found by the trial judge upon granting the temporary restraining order, was enough to constitute a nuisance so as to entitle plaintiffs to abatement thereof. The legal conclusion of the court that it was not, was contrary to the law as pronounced in the cases cited above.
The record shows that alternatively the court was of the opinion that the plaintiffs had no cause of action against the condominium association for abatement of the nuisance. The basis for that view of the court was that because the noises from the lobby floor which created the nuisance were attributable to failure of the developer (the defendant's predecessor in ownership) to have soundproofed the lobby floor, the continuation of the condition by the defendant in its operation of the building did not render it subject to suit to abate the nuisance; and further that the remedy of the plaintiffs, if any, was to file an action against the developer for improper construction of the lobby floor.
That reason was insufficient to support a refusal to abate the nuisance. One who knowingly maintains, or permits continuation on his property of a nuisance originated by his predecessor in ownership, is liable for the nuisance. Palm Corporation v. Walters, supra, 145 Fla. 527, 4 So.2d 696, 699 (1941); Shamhart v. Morrison Cafeteria Co., 159 Fla. 629, 32 So.2d 727 (1947), 2 A.L.R.2d 429; 23 Fla.Jur. Nuisance § 22.
A third reason which it appears the court considered to constitute basis to deny relief to plaintiffs was that many of the unit owners (not affected by the nuisance) preferred to have the terrazzo corridor in the lobby remain bare because they regarded the carpeting thereon to be unsightly and to constitute a danger to persons walking on it.[5] The court concluded on "balancing the interests" of the plaintiffs and of the unit owners who wanted the corridor flooring left bare, that the interests of the latter should prevail, noting that the plaintiffs were only one and the other unit owners were many.
In our view the foregoing was insufficient reason or basis on which to deny abatement of the nuisance. If the carpeting used in the corridor to obviate the noise was in fact unsightly, a more sightly carpet could be laid. If the carpet being used was worn or otherwise in a condition that presented danger to persons walking on it, a new and safe carpet could have been installed. Finally, the interests of the plaintiffs and those advanced by other unit owners were not apposite. The interests of the latter did not relate to the noise nuisance affecting the plaintiffs. If, as established by the evidence, the plaintiffs were entitled to have the terrazzo lobby corridor covered or otherwise treated to abate the noise therefrom, the desires of other tenants of the building (not affected by the noise) to have the corridor floor left bare, should not operate to negate plaintiffs' right to abatement. No substantial or undue harm would result to the other unit owners by the abatement of such nuisance.
To the extent that it was incumbent upon the plaintiffs to show that the noise was such as to constitute a nuisance to reasonable persons (Putnam v. Roudebush, 352 So.2d 908 (Fla. 2d DCA 1977)), they met that burden. The noise and its effect as they described it was patently such as would materially "annoy and disturb one in the free use, possession, or enjoyment of his property" and render its ordinary use or occupation physically uncomfortable. That the noise was real, and sufficient to have such effect on a reasonable person, was recognized by the developer and by the *919 condominium association, as evidenced by their actions for alleviation of the problem. The findings of the judge in the order for temporary injunction, based on evidence presented by the parties, are sufficient answer to that contention of the appellee.
Appellee's argument that noises such as those inflicted upon the plaintiffs are no more than the noises and discomforts which must be experienced in condominium apartment living is not applicable here. The noises experienced by plaintiffs from the bare terrazzo floor in the lobby above their apartment are not noises of the character which reasonably may be expected to come from other nearby or adjoining apartments as a result of ordinary living activities of their close neighbors. The noises and annoyance experienced by the plaintiffs were those which resulted from the manner in which a common facility of the condominium building, for which the condominium association was responsible, was maintained.
In summary, we hold that on the record the plaintiffs presented a case for abatement of a nuisance, and the judgment should be reversed on the ground that dismissal of the cause was based on misapprehensions of the applicable law. In a case such as this, where the nuisance or continuation of the nuisance arises out of the manner in which a business is operated, equity will abate the nuisance by a decree which adopts methods calculated to eliminate or minimize the injurious features thereof. Shamhart v. Morrison Cafeteria Co., supra, 159 Fla. 629, 32 So.2d 727 (1947); 2 A.L.R.2d 429.
The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
NOTES
[1] An action subsequently was filed by the condominium association against the developer based on the latter's failure to have insulated the lobby floor.
[2] That offer by the developer was as follows:

"By this letter reference is made to the Coronado I lobby floor and the possible relief to the sound problem experienced by Mr. Baum who has an apartment below.
"My position as representative of Arlen is that if we can afford Mr. Baum any help in this regard we would like to do so.
"I set forth two possibilities as a solution:
"1. To provide an attractive rug over area now uncovered.
"2. To cover the area with a good soundproof vinyl tile which is easy to maintain and comes in attractive patterns.
"If satisfactory to you Arlen will provide any of the two above mentioned floor coverings at their sole expense.
"Kindly indicate your reply as to preference or comment as soon as possible."
[3] The rejection letter was as follows:

"This is to acknowledge the receipt of your letter of August 25, 1977, relative to the Coronado I lobby floor and the possible sound relief.
"The matter discussed in your letter was brought to the attention of the Board of Directors in their meeting which was held last night.
"The suggestions offered in your letter are not acceptable to the Board of Directors."
[4] Examples of the testimony of the plaintiffs as to the noise and its effects were:

BY MR. BAUM: "Q. What effect, if any, does this have upon your sleeping habits.
"A. Oh, we're becoming both nervous wrecks, absolutely nervous wrecks. We can't sleep. We get up in the evening. In the afternoon, it's impossible to grab a nap. They are consistent, especially during holidays or during the summer months there, with all the visitors, and it's unbearable. You have to turn  Well, we just can't sleep. It's impossible."
BY MRS. BAUM: "A. The noise has been horrendous and has made my life a living hell.
* * * * * *
I can count the steps as they come in the door. Some of them do not walk on the carpeting. They wear clogs and they walk on the terrazzo. I can count every step as they come down and walk over to the elevator. I lie in my bed and count the steps."
[5] It was such desire of many of the condominium unit owners which had caused the board of directors to direct the removal of the carpeting from the corridor in February of 1978.