[No. 9482-1-III. Division Three. December 19, 1989.]

PATRICIA JOAN RE, *as Personal Representative, Appellant,* v. MARTIN MILO TENNEY, ET AL, *Defendants,* CARGILL INCORPORATED, *Respondent.*

*Gerald Miller* and *Miller & Reed,* for appellant.

*Michael Mitchell, Richard Monahan,* and *Roach, Monahan & Lowry,* for respondent.

SHIELDS, J.—Patricia Joan Re, as personal representative of her husband's estate, filed a wrongful death and survival action against Martin Tenney, Cargill, Inc., and Walla Walla County, alleging two causes of action based upon negligence and nuisance. Cargill moved for summary judgment dismissal and the trial court granted it. Mrs. Re appeals; we affirm.

Cargill operates a grain elevator on approximately 8 acres at the intersection of Grain Terminal Road[1] and 2nd Street. That intersection is the scene of severe congestion during August when trucks park on both shoulders of the road, waiting to offload grain at the elevator. On August 5, 1986, Terry G. Re was fatally injured while riding his motorcycle southbound on Grain Terminal Road one–half mile north of the elevator. As Mr. Re approached a tractor–trailer rig driven by Martin Tenney, also traveling southbound, he attempted to pass on the left. At that moment, Mr. Tenney began to cross the center line intending to park

---

[1] Also referred to as River Grain Terminal Road.

on the lefthand shoulder further down Grain Terminal Road until he could offload at the grain elevator. Mr. Re attempted to cut back into the right lane of traffic, but collided with the right rear corner of Mr. Tenney's trailer, sustaining fatal injury to his chest. At the time of the collision, the speed of Mr. Tenney's truck was 10 to 15 m.p.h., the speed of the motorcycle was 45 to 50 m.p.h. and the posted speed was 25 m.p.h. The trial court concluded Cargill did not owe a duty of care to Mr. Re and that Cargill was under no obligation to post signs on the public roadway warning of congestion.

The first issue raised is whether Cargill owed a duty to prevent its business invitees from using the roadway as a staging area, which Mrs. Re asserts it did, or a duty to warn travelers on the public highway adjacent to its property of the possibility of congestion, which Cargill asserts it did not.

Mrs. Re contends an occupier of land cannot create a dangerous condition on an abutting roadway without incurring liability for foreseeable injury, citing *Misterek v. Washington Mineral Prods., Inc.,* 85 Wn.2d 166, 531 P.2d 805 (1975); *Collais v. Buck & Bowers Oil Co.,* 175 Wash. 263, 266, 27 P.2d 118 (1933); *Shamhart v. Morrison Cafeteria Co.,* 159 Fla. 629, 32 So. 2d 727, 2 A.L.R.2d 429 (1947). Cargill responds that it had no control over the public roadway or the independent drivers who delivered the grain and therefore owed no duty to the traveling public.

■■ Whether a duty is owed to one who is injured is a question of law. *Youngblood v. Schireman,* 53 Wn. App. 95, 99, 765 P.2d 1312 (1988) (citing *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984)). Generally, an abutting property owner must use and keep his premises in a condition so adjacent public ways are not rendered unsafe

for ordinary travel. *Collais.* The duty, however, is imposed only when correction of the unsafe condition is within the owner's control, as in *Kelly v. Gifford,* 63 Wn.2d 221, 386 P.2d 415 (1963), or responsibility, as in *Groves v. Tacoma,* 55 Wn. App. 330, 777 P.2d 566 (1989) and *Stone v. Seattle,* 64 Wn.2d 166, 391 P.2d 179 (1964).

In *Kelly,* the court held the owner of a developed business center was not responsible for excess surface water which drained from its property and flooded a public highway, causing the plaintiff's brakes to fail. *Kelly,* at 223, noted the County had the duty to provide adequate drainage, a matter not within the control of the property owner.

In *Groves,* the plaintiff sued the City of Tacoma for injuries resulting from a slip and fall on a public sidewalk. The sidewalk spanned a private driveway which provided access to medical offices used by the business invitees of property owners abutting the private driveway. The City filed a third party complaint against the property owners asserting that the use by the business invitees damaged the sidewalk and created the hazard. The City's complaint was dismissed for failure to state a cause of action on a CR 12(b)(6) motion. The court reversed the dismissal, noting that if the driveway were a private one, and if the special use by the owner's business invitees had damaged the sidewalk making it hazardous to pedestrian traffic (even though considered factually remote), the owners could be responsible for the damage and then liability would attach. The undisputed use of the right of way by Cargill and its business invitees as a staging area to offload grain may thus be viewed as a special use of a public roadway. The duty not to permit a traffic obstruction depends upon whether its correction is within the control of Cargill.

Here, the evidence discloses Cargill knew the trucks were using the shoulders of the roadway as a staging area

before offloading grain at the elevator. It also knew the two lanes of Grain Terminal Road were occasionally reduced to one. However, Cargill could neither erect "No Parking" signs on a public highway nor enforce them; that duty, as noted in *Kelly,* is imposed on the County which has exclusive control of public highways and is responsible for erecting highway signs. In that regard, the trial court did not err.

In responding, Mrs. Re relies on RCW 47.32.120[2] which makes it unlawful as a public nuisance for any business to obstruct the right of way of a state highway. If an act, or conduct of a business, invites use of the right of way in violation of a statutory duty, the violation may be evidence of negligence, RCW 5.40.050, with respect to the duty.[3] Cargill's property was apparently large enough to permit a staging area on it, without use of the highway. In that regard, correction of the traffic obstruction was within the control of Cargill and the duty arose.

■■ The second issue is whether the obstruction of the public way was the proximate cause of the injury. *Petersen v. State,* 100 Wn.2d 421, 436, 671 P.2d 230 (1983). The facts here closely resemble those in *Braegelmann v. Snohomish Cy.,* 53 Wn. App. 381, 766 P.2d 1137, *review*

---

[2]RCW 47.32.120 provides:

"It is unlawful for any person to . . . maintain a business, the nature of which requires the use by patrons or customers of property adjoining the structure or establishment unless the structure or establishment is located at a distance from the right of way of any state highway so that none of the right of way thereof is required for the use of the patrons or customers of the establishment. Any such . . . business maintained that makes use of or tends to invite patrons to use the right of way or any portion thereof of any state highway by occupying it while a patron is a public nuisance, and the department may fence the right of way of the state highway to prevent such unauthorized use thereof."

[3]However, if the basis of the nuisance claim is negligent conduct, the nuisance claim need not be considered apart from the negligence action. *Hostetler v. Ward,* 41 Wn. App. 343, 360, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986).

*denied,* 112 Wn.2d 1020 (1989), which held that even though a road was negligently designed, which might make the defendant County liable for the plaintiff's injuries, there was no evidence of legal causation because the defendant driver was speeding, traveling over the center line, and intoxicated. His conduct constituted an intervening cause, superseding the County's negligence. *Braegelmann,* at 386. *See also* WPI 12.05. The evidence here indicates Mr. Tenney was one–half mile north of the elevator, traveling 10 to 15 miles per hour. Brent Richmond, a friend of Mr. Re who was a short distance behind on a second motorcycle, stated that both sides of the shoulder were clear and that any trucks parked along the road were some distance ahead of the collision. When Mr. Tenney started to turn left to park on the opposite side of the road, neither vehicle was in an obstructed part of the public way. At that point, Mr. Tenney's maneuver was an intervening cause, but not a superseding one. The evidence also indicates Mr. Re was traveling twice the speed limit when he attempted to pass Mr. Tenney, and that he looked back at Mr. Richmond immediately before the collision.

While the issue of causation is generally a question of fact for the jury, if the facts are not disputed, causation may be decided as a matter of law. Viewing the evidence in a light most favorable to Mrs. Re, it is concluded the intervening cause of Mr. Tenney's change of lane, coupled with Mr. Re's conduct involving excessive speed and inattention, superseded the negligence of Cargill. The obstruction ahead on the shoulders of the road did not proximately cause the fatality. We find no error.

 Mrs. Re also contends Cargill's failure to provide off–road parking constituted recklessness, which she contends is an additional basis for a valid nuisance claim. A review of Mrs. Re's memorandum in response to the motion for summary judgment discloses she did not argue reckless conduct to the trial court. Therefore, the issue will not be

considered here.[4] *Wilson v. Steinbach,* 98 Wn.2d 434, 440, 656 P.2d 1030 (1982).

The order on summary judgment as to Cargill is affirmed.

MUNSON, A.C.J., and GREEN, J., concur.

---

[4]Even if considered, having determined there is no causal relationship between Cargill's refusal to provide off-road parking and the fatality, there is no need to decide if Cargill's conduct was reckless.